RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0447p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CLUB ITALIA SOCCER & SPORTS ORGANIZATION,
INC., a Michigan Non-Profit Corporation,
                              *Plaintiff-Appellant,*

           *v.*

CHARTER TOWNSHIP OF SHELBY, MICHIGAN,
                              *Defendant-Appellee.*

No. 05-2360

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-72338—George C. Steeh, District Judge.

Argued: September 20, 2006

Decided and Filed: November 30, 2006

Before: CLAY and GILMAN, Circuit Judges; STAFFORD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Cindy Rhodes Victor, THE VICTOR FIRM PLLC, Utica, Michigan, for Appellant. Robert J. Seibert, SEIBERT AND DLOSKI, Mt. Clemens, Michigan, for Appellee. **ON BRIEF:** Cindy Rhodes Victor, THE VICTOR FIRM PLLC, Utica, Michigan, for Appellant. Robert J. Seibert, SEIBERT AND DLOSKI, Mt. Clemens, Michigan, Robert S. Huth, Jr., KIRK & HUTH, Clinton Township, Michigan, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. Plaintiff, Club Italia Soccer & Sports Organization, Inc., appeals a September 6, 2005 order granting summary judgment in favor of Defendant, Charter Township of Shelby, to dismiss Plaintiff's due process and equal protection claims. Plaintiff alleges that Defendant violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment as made actionable under 42 U.S.C. § 1983 by accepting a soccer complex development proposal from Soccer City, Inc. ("Soccer City") without first granting Plaintiff the opportunity to submit a bid on terms equal to those granted to Soccer City. Soccer City is a for-profit corporation engaged in the

---

[*]The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

business of developing, designing, constructing, and maintaining soccer fields and facilities. The district court dismissed Plaintiff's claims for lack of standing, holding that Plaintiff did not allege an injury-in-fact because Plaintiff failed to demonstrate the existence of a protected liberty or property interest. While we find that Plaintiff did in fact have standing, we **AFFIRM** the order of the district court on the ground that Plaintiff failed to state a claim for relief.

## BACKGROUND

### I.    Factual History

The facts in this case are largely undisputed. Sometime in 2002, Soccer City contacted Defendant to propose the development and construction of soccer facilities on Defendant's property. Defendant authorized Soccer City to conduct environmental tests on the property and instructed Soccer City to submit a formal development proposal. The first site Soccer City tested was found to be unsuitable for construction, so a second site was tested. After determining that the second site was suitable, Soccer City submitted a formal proposal to Defendant on December 8, 2004.

In March 2005, Plaintiff, a non-profit sports organization, contacted Defendant and obtained a copy of Soccer City's proposal. At a town board meeting shortly thereafter, on April 5, 2005, Jack Ciraulo, Plaintiff's president, voiced concerns about the bidding process and expressed Plaintiff's interest in submitting a proposal. The Board held a special session on April 11, 2005, during which it decided to accept additional proposals. On April 15, 2005, the Board issued an "invitation to compete," inviting all other interested parties to submit proposals. The Board required any interested parties to submit their bids within the following three weeks in order to have them considered. The Board further required a guarantee from any new bidders that whomever was awarded the contract would reimburse Soccer City for the environmental testing it had conducted.

Plaintiff was unable, in the time allotted, to conduct the necessary surveying or designing, or to obtain the necessary engineering services needed to complete its bid. Thus, Plaintiff could not prepare a proposal within the three-week period. On May 6, 2005, the day the bids were due, Plaintiff contacted the Board to request additional time to prepare its proposal. The Board never responded to Plaintiff's request, and subsequently accepted the only bid submitted, which was the one from Soccer City.

### II.    Procedural History

On June 14, 2005, Plaintiff filed a complaint in district court alleging that Defendant's bidding procedures and its acceptance of a bid from Soccer City violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiff simultaneously moved for a preliminary injunction, requesting that the district court prohibit Defendant from beginning work on Soccer City's proposal until after the district court resolved the issues alleged in the complaint. The district court denied Plaintiff's motion for a preliminary injunction on June 24, 2005.

On July 7, 2005, Defendant moved for summary judgment. The district court held a hearing on Defendant's motion on August 22, 2005 and thereafter granted the motion on September 6, 2005. Plaintiff timely appealed the district court's order on September 30, 2005.

## DISCUSSION

### I.    Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). Summary judgment is proper where there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## II.      Plaintiff's Standing to Bring its Claims

### A.      Requirements for Standing

#### 1.      Constitutional Standing Requirements

The standing doctrine imposes both constitutional and prudential limitations on who may properly bring suit in federal court.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The basis for constitutional standing is derived from Article III's "Case or Controversy" requirement, which limits federal court authority to legal issues "'which are traditionally thought to be capable of resolution through the judicial process.'"  *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968)).  Constitutional standing requires a plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  This encompasses three distinct elements:

> First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  These requirements exist to insure that the litigants possess "a personal stake in the outcome of the controversy."  *Baker v. Carr,*  369 U.S. 186, 208 (1962).

#### 2.      Prudential Standing Requirements

Prudential standing imposes at least two additional requirements on plaintiffs.  *Allen*, 468 U.S. at 751.  First, a plaintiff may not raise generalized grievances.  *Fed. Elec. Comm'n v. Akins*, 524 U.S. 11, 23-25 (1998).  Second, a plaintiff generally may not raise the rights of third parties.  *Allen*, 468 U.S. at 751; *Craig v. Boren*, 429 U.S. 190, 193-94 (1976).  The prudential standing requirements, unlike the constitutional limitations, are not derived from law, but instead are judicially constructed self-imposed restraints on standing.  *Allen*, 468 U.S. at 751.  As such, they vary in application, and there exist some prudential standing requirements that are not universally applied in all cases. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 400 n.16 (1987).

One such narrowly applied requirement is the "zone of interest" test.  The zone of interest test requires a plaintiff to show that the rights he or she is seeking to protect are those rights contemplated by the statute or constitutional guarantee being invoked.  The test originated in *Association of Data Processing Service Organization, Inc. v. Camp*, 397 U.S. 150, 154 (1970), which established the requirements for standing under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), ("APA").  In that case, the Supreme Court held that a plaintiff has standing to sue under the APA as a person "aggrieved" so long as the plaintiff suffered an injury-in-fact and seeks to protect interests which "are arguably within the zone of interests to be protected or regulated by the statute or constitutional guaranty in question."  *Data Processing*, 397 U.S. at 153-54.

There remains some question as to the category of cases to which the zone of interest test applies.  Subsequent Supreme Court cases have applied the zone of interest test almost exclusively to APA cases.  *See Clarke*, 497 U.S. at 400 n.16 (discussing this tendency to apply the test only in

the context of APA cases). However, the Court has declined to hold that the APA represents the *only* framework under which to apply the zone of interest test. In fact, the Court has recently noted that the test may be appropriately applied outside of this context. *See Bennett v. Spear*, 520 U.S. 154, 163 (U.S. 1997) (citing as examples of this application *Dennis v. Higgins*, 498 U.S. 439, 449 (1991) and *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 320-321, n.3 (1977)).

This Circuit has applied the zone of interest test outside the context of the APA on numerous occasions. *See, e.g., Nat'l Solid Waste Mgm't v. Daviess*, 434 F.3d 898, 901-02 (6th Cir. 2006); *Huish Detergents, Inc. v. Warren County, Kentucky*, 214 F.3d 707, 710 (6th Cir. 2000). Accordingly, to assert standing in the present case, Plaintiff must demonstrate that the rights it seeks to assert are protected by the zone of interests of the Due Process and the Equal Protection Clauses.

**B.      Analysis**

**1.      Plaintiff's constitutional standing**

In order to assert constitutional standing, Plaintiff must show that it suffered an injury-in-fact that is cognizable by this Court. *Lujan*, 504 U.S. at 560. The district court improperly approached this question by applying an inapplicable body of law in addressing the question of Plaintiff's standing; and, additionally, by conflating the standing analysis for Plaintiff's claims with the merits of its due process claim.

The district court's conclusion that Plaintiff lacks standing seems to be based on two grounds. First, the district court held that because Plaintiff does not allege a legally protectable interest, Plaintiff does not have standing. This conclusion improperly grafts the standing inquiry onto the merits of Plaintiff's due process claim. The fact that Plaintiff has no legal right to bid on the contract at issue, and therefore, has not suffered the invasion of a protected liberty or property interest, has no bearing on the question of standing. As the Supreme Court clarified in *Data Processing*, a plaintiff need not have a "legal right," or a right protected by the law of property, contract, tort, or statute, to suffer injury-in-fact. 397 U.S. at 153. Stripped to its essence, the district court's conclusion is simply that Plaintiff does not allege a violation of an interest protected by the Due Process Clause. While this argument goes toward the merits of Plaintiff's due process claim, it does not affect the standing inquiry.

The district court further based its conclusion that Plaintiff did not have standing to bring its claims upon the improper characterization of Plaintiff as a "disappointed bidder." The court determined that as a disappointed bidder, Plaintiff was unable to assert standing. In coming to this conclusion, the district court relied upon several cases for the proposition that a disappointed bidder has no standing to sue. *See United of Omaha Life Ins. v. Solomon*, 560 F.2d 31 (6th Cir. 1992); *Kasom v. City of Sterling Heights*, 600 F. Supp. 1555 (E.D. Mich. 1985); *Malan Construction Corp. v. Board of County Road Comm'rs*, 187 F. Supp. 937 (E.D. Mich. 1960).

The law concerning whether a disappointed bidder is conferred standing in a federal court has been the source of a fair amount of confusion. In the interest of clarity, we will begin with a discussion of the general law in this area.

In *Perkins v. Lukens Steel Co.*, the Supreme Court expressly addressed whether a disappointed, or unsuccessful, bidder has standing to seek relief in federal court. The Court held that a disappointed bidder for a federal government contract did not have standing to sue the federal government for violations of bidding rules contained in the Public Contracts Act. 310 U.S. 113, 125-26, 132 (1940). The Court reasoned that "no legal rights of [plaintiffs] were shown to have been invaded or threatened" and that "neither the damage nor loss of income in consequence of the action of the Government, which is not an invasion of a legally recognized right, is itself a source of the legal rights in the absence of constitutional legislation recognizing it as such." *Id.* at 125.

Since that ruling, the impact of *Lukens Steel* has been eroded by the passage of the APA. Increasingly more courts have come to view the APA as proof of congressional intent to create private rights in contracting with the government. These courts have reasoned that this congressional intent supplanted the Supreme Court's previous ruling and conferred standing upon disappointed bidders. *See B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 722-23 (2d Cir. 1983); *Airco, Inc. v. Energy Research & Dev. Admin.*, 528 F.2d 1294, 1296 (7th Cir. 1975); *Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402, 403 (9th Cir. 1975); *Merriam v. Kunzig*, 476 F.2d 1233, 1242 (3d Cir. 1973); *William F. Wilke, Inc. v. Department of Army*, 485 F.2d 180, 182-83 (4th Cir. 1973); *Scanwell Laboratories., Inc. v. Shaffer*, 424 F.2d 859, 865-67 (D.C. Cir. 1970).

Unlike those circuits, this Court has declined to depart from *Lukens Steel* in its entirety. Instead, we have held that the APA represents an exception to the general rule that disappointed bidders do not have standing. Where there is proof of congressional intent to confer standing upon a disappointed bidder, this Court will recognize such standing. However, it remains the law in this Circuit that where the APA or similar legislation that expresses a congressional intent to create standing does not apply, a disappointed bidder does not have standing before this Court. As we explained in *Cincinnati Electronics Corp. v. Kleppe*,

> Rather, we view the present case as dealing with an exception recognized in *Lukens Steel*, 310 U.S. at 125 . . . where Congress has by 'constitutional legislation' recognized the legal right of a bidder for government contracts to benefit from the policy of granting a fair share of such contracts to small business concerns. Standing is conferred by Section 10 [of the APA] only when a relevant statute indicates a congressional intent that the person or firm seeking review comes within the zone of interests sought to be regulated or protected. Absent such a congressionally created exception, the general rule of *Perkins v. Lukens Steel*, supra, that a disappointed bidder has no legally enforceable right against the government's award of a procurement contract retains its validity.

509 F.2d 1080, 1085-86 (6th Cir. 1975); *see also Hoke v. Tennessee Valley Auth.*, 854 F.2d 820, 825 (6th Cir. 1998) (discussing *Kleppe*).

Thus, this Circuit has recognized the passage of the APA as an *exception* to the general rule in *Lukens Steel*, not as a legislative rejection of it. Therefore, unless a party brings a suit under the APA or similar legislation which evinces a congressional intent to create a grounds for standing for a disappointed bidder, this Court will not confer standing upon disappointed bidders. *Kleppe*, 509 F.2d at 1085-86.

Because Plaintiff in the present case does not rely on the APA or any similar legislation, it would, as the district court held, be improper to grant Plaintiff standing as a disappointed bidder. This conclusion, however, does not end the standing discussion. While the district court properly held that Plaintiff did not have standing *as a disappointed bidder*, it neglected to address Plaintiff's assertion that it is not, in fact, a disappointed bidder because it never actually submitted a bid. Instead, Plaintiff contends that its standing arises from the fact that it was not afforded an adequate opportunity to submit a proposal in an open bidding process. Therefore, Plaintiff argues, it has suffered the necessary injury-in-fact to assert standing without relying on the disappointed-bidder theory.

We are persuaded that Plaintiff cannot be characterized as a disappointed bidder because Plaintiff never actually submitted a bid. *See Nat'l Fed'n of Fed. Employees v. Cheney,* 883 F.2d 1038, 1053-54 (D.C. Cir. 1989) (concluding that since neither the appellant nor its members ever submitted a bid, it was not a disappointed bidder in a procurement contract case). Therefore, the

district court's focus on cases addressing the standing of a disappointed bidder was misplaced. Plaintiff need only allege a cognizable injury-in-fact and show that the rights it seeks to have protected fall within the zone of interest of the constitutional guarantees being invoked in order to have standing.

Defendant's refusal to allow Plaintiff to bid on the contract allegedly caused it to suffer an economic injury, since it precluded Plaintiff from being considered for a lucrative contract. This Court has explicitly held that such an economic injury is sufficient to confer standing upon a party. *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1089 (6th Cir. 1981). The district court improperly distinguished *Owen of Georgia* on the basis that it involved Tennessee instead of Michigan law. However, the proposition that economic injury of a prospective bidder constitutes an injury-in-fact is not derived from Tennessee law. In fact, this Court expressly stated in that case that in coming to this conclusion it was not looking to Tennessee law, but rather, to the United States Supreme Court. Specifically, we held

> Even looking beyond Tennessee law to the recent restrictive decisions of the Supreme Court we would find that Owen would have standing. As a prospective, and here the low bidder for Shelby County business, Owen clearly has economic interests at stake which give it standing. Its injury in fact is loss of business and profits which is "fairly traceable to the defendants acts or omissions." *Village of Arlington Hts. v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261 (1977).

*Owen of Georgia*, 648 F.2d at 1089. Further, several of our sister circuits have also held that a prospective bidder's economic interest in a proposal on which it was not allowed to bid constitutes injury-in-fact for the purposes of standing. *See, e.g., Image Carrier Corp. v. Beame*, 567 F.2d 1197, 1201 (2d Cir. 1977) ("As prospective bidders for City business, appellees clearly have economic interest at stake sufficient to give them standing."). Plaintiff's economic injury is well-recognized as sufficient to support standing.

Contrary to Defendant's argument, the fact that Plaintiff is a non-profit organization does not undermine the theory that Plaintiff's economic injury is an injury-in-fact. The Supreme Court has already rejected this argument. *See Vill. of Arlington Heights v. Metro. Hous. Dev.,* 429 U.S. 252, 262 (1977) (holding that a non-profit organization had standing based upon an economic injury). Defendant further argues that Plaintiff must submit evidence of this economic injury in order to avoid summary judgment. This argument is also unconvincing. While *Lujan* does state that "[i]n response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'" to support its allegations, the Court was referring to a situation where the facts behind a plaintiff's injury were contested. 504 U.S. at 561. The Court went on to explain: "Since [standing is] not a mere pleading requirement but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* According to the Federal Rules of Civil Procedure, a plaintiff need not supply an affidavit setting forth facts unless those facts are actually contested. Fed. R. Civ. P. 56(e). Defendant has not contested that Plaintiff may have suffered economic injury, but instead has argued that such an injury does not constitute injury-in-fact within the meaning of Article III. Since we have held that Plaintiff's claim, if proven, would constitute an injury-in-fact, there is nothing more for Plaintiff to prove in order to show that it has standing.

In addition to alleging an injury-in-fact, Plaintiff has no trouble meeting the other two requirements of constitutional standing: Plaintiff's injury is traceable to the actions of Defendant; and it is possible, instead of merely speculative, that Plaintiff can succeed on its claims. *Lujan*, 504 U.S. at 560.

### 2.          Plaintiff's prudential standing: Zone of Interest Test

Once Plaintiff alleges an injury-in-fact that is fairly traceable to the actions of Defendant, it must show that it has met the prudential standing requirements. It is uncontested that Plaintiff is not asserting a generalized grievance, nor is it attempting to assert the rights of a third party. Plaintiff must also show that the interests it seeks to vindicate with this suit fall within the zone of interest of the constitutional guarantees being invoked.

Plaintiff's due process claim essentially alleges that the bidding regulations denied the organization a protected interest without the opportunity to be heard. One of the crucial roles of the Due Process Clause is to protect the rights of notice and opportunity to be heard. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (U.S. 1971). Accordingly, Plaintiff's due process claim seeks to vindicate an interest protected by the Due Process Clause and meets the zone of interest test.[1] Likewise, Plaintiff's equal protection claim falls within the zone of interest of the Equal Protection Clause. Plaintiff's equal protection claim alleges that Defendant treated it differently from Soccer City without a rational basis for its actions. The Equal Protection Clause has been construed as the guardian of the right of similarly situated persons to be treated equally. *See Vacco v. Quill*, 521 U.S. 793, 799 (1997). Therefore, Plaintiff's equal protection claim seeks to vindicate an interest protected by the Equal Protection Clause and meets the zone of interest test.

Thus, Plaintiff has standing to assert its due process and equal protection claims because Plaintiff alleged an injury-in-fact fairly traceable to Defendant's allegedly illegal conduct and the interests Plaintiff seeks to protect fall within the zones of interest of the Due Process and Equal Protection Clauses, respectively.

### III.          Plaintiff's alleged injuries do not constitute a violation of the Due Process Clause

#### A.          The Due Process Clause Claim

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] . . .any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In essence, Plaintiff's due process claim is that, as a prospective bidder, Plaintiff had a property or liberty interest in the opportunity to bid and it was denied that interest without due process of the law. In other words, Plaintiff claims Defendant's bidding regulations denied Plaintiff its procedural due process rights under the Fourteenth Amendment.

The right to procedural due process "requires that when a State seeks to terminate [a protected] interest . . . it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1971) (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)). Importantly, procedural due process rights are only violated when a *protected* liberty or property interest is denied without adequate hearing. Thus, in order to succeed on this claim, Plaintiff must show (1) that it was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002); *see also Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006).

---

[1] Arguably, when addressing a due process claim, the statute or constitutional guarantee in question is the underlying state law that creates the protected property interest. In *Bzdzuich v. United States Drug Enforcement Admin.*, 76 F.3d 738, 742 (6th Cir. 1996), this Circuit looked to the underlying state statute creating the protected property interest when addressing whether the plaintiff's interests passed the zone of interest test. In the instant case, however, the Due Process clause itself is the relevant statute or constitutional guarantee in question for the purpose of the zone of interest test.

### B.      Analysis

#### 1.      Liberty Interest

The Supreme Court has held that a liberty interest refers to more than just "freedom from bodily restraint but also [refers to] the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men [and women]." *Roth*, 408 U.S. at 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).

While this class of liberty interests is intentionally broad, it should not be viewed as a catch-all category to support any and all due process violations. The Due Process Clause cannot be used to execute a judicial coup over the handling of government contracts under the guise of protecting liberty interests. Rather, a state actor's decision to deny a plaintiff a single contract only amounts to a restraint on business when those "actions . . . preclude [Plaintiff] from entering into other contracts with the State, [or] besmirch [Plaintiff's] good name." *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992).

In the present case, Defendant's decision to award the challenged contract to Soccer City instead of Plaintiff did not besmirch Plaintiff's name, nor did it preclude Plaintiff from entering into any other contracts with the state. This decision affected only the instant contract and thus Defendant's decision to award the contract to Soccer City instead of Plaintiff did not rise to the level envisioned in *Solomon*. Accordingly, Plaintiff has failed to allege the deprivation of a liberty interest.

#### 2.      Property Interest

Property interests are not created by the Constitution but "by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Wojick v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). According to this Court,

> a constitutionally protected property interest in a publicly bid contract can be demonstrated in two ways. A bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the County had limited discretion, which it abused, in awarding the contract.

*Enertech Elec. v. Mahoning County Comm'rs*, 85 F.3d 257, 260 (6th Cir. 1996).

It is clear from the record that Plaintiff is unable to make either of the requisite showings. Plaintiff does not argue that it was ever awarded, or even considered for, this contract because it was unable to even submit a bid. Further, it is undisputed that there was no external factor that limited Defendant's discretion in awarding this contract. The bidding regulations Defendant enacted were entirely self-imposed.

However, according to Plaintiff, the district court improperly focused on this question of whether Plaintiff had a property interest in the actual contract. Plaintiff argues that since it is not a disappointed bidder, the proper inquiry is not whether Plaintiff had a property interest in the *government contract* but whether Plaintiff had a property interest in *the right to bid itself*. *See TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 793 (6th Cir. 2005). Plaintiff asserts that the "invitation to compete" created a property interest in the right to bid itself, so there existed a protected property interest. While we agree that this is the proper inquiry, we are unpersuaded by Plaintiff's argument. In *TriHealth Inc.*, this Court rejected the identical argument and concluded

that the plaintiff in that case had not alleged a protected property interest. 430 F.3d at 793. We find no differences between that case and the present one that would justify a different outcome on this issue.

Since Plaintiff is unable to allege that it was deprived of a liberty or property interest protected by the Due Process Clause, we need not reach the question of whether the plaintiff was afforded the requisite procedural due process. *Thomas*, 304 F.3d at 576. Therefore, we conclude that Plaintiff's due process claim was properly dismissed.

## IV.    Plaintiff's alleged injuries do not constitute a violation of Plaintiff's equal protection rights

### A.    The Equal Protection Clause Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.' U.S. Const. amend. XIV, § 1. The Supreme Court has stated that this language 'embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (quoting *Vacco*, 521 U.S. at 799). To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. *Id.*; *see also TriHealth, Inc.*, 430 F.3d at 788.

When a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called "class of one" theory and must prove that the government's actions lacked any rational basis. *Radvansky*, 395 F.3d at 312 . Under rational basis scrutiny, government action amounts to a constitutional violation only if it "is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005). A "plaintiff may demonstrate that the government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." Id. at 711; *see also TriHealth, Inc.*, 430 F.3d at 788 (citing *Warren*, 411 F.3d at 710 ).

Under rational basis review, the defendant "has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* at 790 (quoting *Fed. Comm. Comm'n v. Beach Comm., Inc.*, 508 U.S. 307, 315 (1993). The burden falls squarely to the plaintiff, who must overcome the presumption of rationality by alleging that the defendant acted in a manner clearly contrary to law. *Id.*

### B.    Analysis

In the present case, Plaintiff has failed to state a claim for relief under the Equal Protection Clause because, based on the facts alleged, Plaintiff will never be able to prove that Defendant lacked a rational basis for its actions. As we have stated, to establish that Defendant lacked a rational basis, Plaintiff must negate every conceivable basis for Defendant's actions or show that Defendant was motivated by animus, which is impossible where Defendant's actions have a very clear rational basis. Plaintiff objects to Defendant's decision to require bids to be submitted within three weeks of the invitation to bid and its decision to require bidders to agree to repay Soccer City for environmental testing if another party were to be awarded the contract. It would appear that Defendant prescribed a three-week period in order to expedite the project and conditioned award of the bid on repayment of the environmental testing so that a third party would not unfairly benefit

from Soccer City's expenditures. Further, Plaintiff neither expressly alleges animus nor alleges any facts giving rise to the inference of animus. *See TriHealth Inc.*, 430 F.3d at 789 (stating that a plaintiff must allege facts evidencing animus). Finally, Defendant's actions were not clearly contrary to any existing law and, further, Plaintiff does not allege that they were.

Plaintiff tries to avoid dismissal of its equal protection claim by attempting to shift the burden of proof to Defendant. Plaintiff argues that Defendant has offered no rational basis for its actions and that therefore Plaintiff should succeed. Under rational basis review, Defendant need not offer any rational basis so long as this Court can conceive of one; the burden falls entirely to Plaintiff to show there is no rational basis, not the other way around. *See id.* at 790.

Further, Plaintiff fails to allege that it was singled out for adverse treatment. According to Plaintiff, the invitation to compete applied to all entities except for Soccer City, which had already submitted its development proposal. Thus, this represents a case where Soccer City was treated beneficially, but no party was discriminated against. *Id.* at 788. As this Court explained in rejecting a similar claim in *Trihealth Inc.*,

> TriHealth is not a person or entity alleged to have been intentionally singled out by the government for discriminatory adverse treatment. Rather, the TriHealth plaintiffs are three named health care providing plaintiffs in this action–three among a total of nine Hamilton County entities that might have been qualified to share in the distribution of the tax levy funds that were instead awarded exclusively (for purposes of the equal protection claim) to University Hospital. It thus appears that the only "class of one" implicated by this claim is University Hospital. In effect, the TriHealth plaintiffs complain not that they were singled out for adverse treatment, but that University Hospital was singled out for beneficial treatment.

*Id.* As was the case in *TriHealth Inc.*, the absolute most Plaintiff can show is that it was treated similarly to everyone except one party, and that party was simply the beneficiary of special treatment. This does not give rise to an equal protection violation. Plaintiff fails to state a claim for relief under the Equal Protection Clause because Plaintiff failed to negate every conceivable basis which might support Defendant's actions or allege that Defendant's actions were motivated by animus. Therefore, Plaintiff's equal protection claim was properly dismissed.

Accordingly, this Court affirms the order of the district court because, while Plaintiff has standing, it fails to state a claim based upon either due process or equal protection.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court.