**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 20a0126n.06**

**No. 19-1229**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| MICHIGAN INTERLOCK, LLC; MICHELE I. COMPTON, )<br><br>Plaintiffs-Appellants, )<br><br>v. )<br><br>ALCOHOL DETECTION SYSTEMS, LLC; DEI HOLDINGS, INC., )<br><br>Defendants, )<br><br>HONORABLE RUTH JOHNSON, )<br><br>Defendant-Appellee. ) | **FILED**<br>Feb 28, 2020<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: GIBBONS, KETHLEDGE and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Michigan Interlock LLC and its owner Michele Compton (together, "Interlock") distributed Breath Alcohol Ignition Interlock Devices ("BAIIDs") in Michigan. When Interlock was removed from a list of certified BAIID manufacturers distributed by the Michigan Secretary of State, Interlock filed suit pursuant to 42 U.S.C. § 1983. As relevant here, Interlock alleges that Michigan Secretary of State Ruth Johnson effectuated an unlawful taking and deprived Interlock of its right to both substantive and procedural due process. Interlock names Johnson in both her individual and official capacities.

The district court dismissed each of the federal claims, finding that (1) sovereign immunity barred Interlock's procedural due process claim against Johnson in her official capacity, (2) Interlock lacked standing to bring its substantive due process and unlawful takings claims against

Johnson in her official capacity, and (3) qualified immunity barred all claims against Johnson in her individual capacity. We agree with the district court that Interlock lacks standing to pursue its official capacity claims and that Johnson is entitled to qualified immunity for the claims in her individual capacity. We therefore affirm the district court's dismissal of Interlock's § 1983 claims.

I.

Michele Compton founded Interlock to distribute, install, and service BAIIDs in Michigan. Interlock is a certified service provider authorized to service and install BAIIDs in Michigan. A BAIID is "a breath alcohol analyzer" that "connects with a motor vehicle's ignition" to "estimate[] a driver's bodily alcohol content and prevent[] a vehicle from starting if the would-be-drivers' breath alcohol meets or exceeds" the legal limit. DE 9, Am. Compl., Page ID 208 ¶ 28. The Michigan Department of State ("Department") is required to revoke a habitual drunk driver's license; if the habitual drunk driver is eligible for a restricted license, the Department requires him to install a BAIID on any vehicle he owns or operates. Data collected from the BAIID is automatically transmitted to the Department to determine if the driver is attempting to operate the vehicle while intoxicated.

Manufacturers seeking to operate in Michigan must be certified by the Department and comply with the statutory requirements. A "manufacturer or service provider may not lease, install, or service BAIIDs in Michigan unless and until it is certified . . . and placed on [the] list of approved vendors." *Id.* ¶ 31. The list of certified BAIID manufacturers is provided to drivers that are required to install a BAIID to operate a motor vehicle. The Department's certified BAIID manufacturer list includes not only the manufacturer's name and contact information but also the manufacturer's designated service provider and its telephone number.

From 2006 to 2016, Interlock operated as BAIID manufacturer Alcohol Detection Systems LLC's ("ADS's") exclusive distributor in Michigan and was included on the Department's list of certified BAIID manufacturers as ADS's service provider in Michigan.

In March 2016, Michigan required BAIIDs "to be equipped with cameras capable of recording a digital image of the individual providing the [breath] sample" by June 2016. *Id.* ¶¶ 2, 54. The law also provided the Department with authority to suspend and revoke manufacturer certification for various reasons. After the Department entered a suspension order, a manufacturer could submit an application to have a hearing on the order. The BAIIDs Interlock used did not have cameras, so Interlock secured $1.6 million in loans "to pay ADS to manufacture and supply the upgraded camera units." *Id.* ¶¶ 3, 59.

In January 2018, DEI Holdings, Inc., d/b/a Directed Electronics, Inc. ("DEI") purchased ADS and sought to distribute and install BAIIDs in Michigan.

On March 7, 2018, the Department and the Secretary (together, "State Defendants") filed a summary suspension complaint and order decertifying ADS's BAIIDs for several reasons, including that the BAIIDs failed to: function properly, include software upgrades, periodically take samples, and automatically report their data. The State Defendants did not provide Interlock with notice or an opportunity to contest the order. Further, the State Defendants issued a press release the next day that "instructed customers 'to contact Michigan Interlock to have [their BAIID] removed—for free—and have a new device installed by one of five approved manufacturers.'" *Id.* ¶ 86. The State Defendants also notified Michigan state courts that ADS's BAIIDs were no longer certified, and therefore "any driver with an ADS device will need to contact Michigan Interlock to have the device removed at no cost." *Id.* ¶ 87.

Shortly after the order issued, the State Defendants met with ADS to negotiate a modification order recertifying ADS's BAIIDs. Interlock was not informed or offered the opportunity to contest ADS's decertification. On March 31, 2018, ADS represented to Interlock that the Department "no longer wanted [Interlock] on the Department's list of approved vendors," and the Department removed Interlock from the list of certified BAIID manufacturers. Interlock also alleges that ADS "remov[ed] [Interlock] from Michigan's approved list of vendors." *Id.* ¶¶ 114, 123, 149, 152. The Department thereafter listed ADS as its own service provider on the certified BAIID manufacturer list. The State Defendants did not provide Interlock with notice of its removal from the list as a designated service provider or an opportunity to contest the decision.

As a result of the order, Interlock lost customers and had to reimburse numerous mechanics for deinstallation costs. ADS refused to reimburse Interlock for any of the deinstallation costs. Interlock also alleged ADS and DEI interfered with its business by "entering [its] property without permission, accessing their computers, phones, files, and systems without permission, and otherwise conducting business with [Interlock's] BAIIDs—without permission." *Id.* ¶ 106.

Interlock filed suit against ADS and DEI, the Michigan Department of State, and Secretary Johnson in her official and individual capacities. Interlock brought three § 1983 claims against Johnson in her official and individual capacities for denial of procedural due process, substantive due process, and unlawful taking. The claims against the Michigan Department of State, ADS, and DEI were dismissed without prejudice. Only the claims against Johnson remain.

Johnson moved to dismiss, and the district court granted Johnson's motion. The district court found that, because Interlock sought no prospective injunctive relief, its procedural due process claim against Johnson in her official capacity was barred by sovereign immunity. It also found that Interlock lacked standing to bring the substantive due process and unlawful taking

claims against Johnson in her official capacity because the non-monetary harms alleged by Interlock were neither caused nor redressable by Johnson. With respect to the individual capacity claims, the district court held that Johnson was entitled to qualified immunity. Interlock appeals the district court's standing and qualified immunity determinations.

II.

Whether the district court was correct in dismissing Interlock's claims under Rule 12(b)(6) is a question of law that we review de novo. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). We review the district court's determination of Article III standing and entitlement to qualified immunity de novo. *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019); *Sutton v. Metro. Gov't of Nashville & Davidson Cty.*, 700 F.3d 865, 871 (6th Cir. 2012).

A plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal citations omitted). The complaint must not only include legal conclusions, but must also make factual allegations, which are accepted as true to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 556). When considering plausibility, "the court

must construe the complaint in the light most favorable to the plaintiff." *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013).

"Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). "[A] court may consider exhibits attached to the complaint, public records, [and] items appearing in the record of the case, . . . so long as they are referred to in the complaint and are central to the claims contained therein . . . ." *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) (quoting *Gavitt*, 835 F.3d at 640). Here, Interlock's complaint references various documents that are central to its claims and included by Secretary Johnson in her motion to dismiss. These include the order of summary suspension, the order dismissing summary suspension complaint and summary suspension order, the stipulated agreement modifying the order of summary suspension, and the list of certified BAIID manufacturers. These documents are considered in evaluating Interlock's § 1983 claims.

### III.

On appeal, Interlock contends that the district court erred in dismissing the 42 U.S.C. § 1983 claims. Interlock argues that (1) it has standing to pursue both its due process and unlawful taking claims against Johnson in her official capacity, and (2) Johnson is not entitled to qualified immunity. We disagree. First, Interlock lacks standing to pursue its official capacity claims as its alleged harms are not redressable by Johnson. Second, Johnson is entitled to qualified immunity for the individual capacity claims because her conduct did not violate a constitutional right that was clearly established. We therefore affirm the district court's grant of Johnson's motion to dismiss Interlock's constitutional claims.

A.

Article III, § 2 of the Constitution provides that the judicial power of the United States extends only to cases and controversies. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). As a threshold requirement for federal jurisdiction, a plaintiff must show:

> (1) he has suffered an injury-in-fact that is both '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely that the injury will be redressed by a favorable decision.

*Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"To establish causation, a plaintiff must show a 'causal connection between the injury and the conduct complained of,' or, in other words, that the injury alleged is 'fairly . . . trace[able] to the challenged action of the defendant.'" *Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560). The injury alleged cannot be the result of "the independent action of some third party." *Lujan*, 504 U.S. at 560 (quoting *Simons v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

Under Article III, the relief sought by a plaintiff also "must provide redress for the injury." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 715 (6th Cir. 2015). "An injury is redressable if a judicial decree can provide 'prospective relief' that will 'remove the harm.'" *Doe v. DeWine*, 910 F.3d 842, 850 (6th Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975)). "Redress is sought *through* the court, but *from* the defendant. . . . The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Id.* (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). A

plaintiff suing a public official "can satisfy the causation and redressability requirements of standing by demonstrating 'a meaningful nexus' between the defendant and the asserted injury." *Durham*, 905 F.3d at 434 (quoting *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014)).

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc.*, 136 S. Ct. at 1547.  This court reviews de novo a district court's determination of Article III standing.  *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019).

1.

Here, Interlock lacks standing to bring its official capacity claims.  Interlock argues that the district court erred in determining that it lacked standing to bring its substantive due process and unlawful takings claims against Johnson in her official capacity.[1]  Interlock alleges two prospective injuries in its complaint: its continued removal from the Department's certified BAIID manufacturer list and the Department's continued use of the data from the BAIIDs Interlock owns. First, because Johnson has neither the authority nor ability to designate a BAIID manufacturer's service provider, the harm alleged from Interlock's removal from the certified BAIID manufacturer list is not redressable by Johnson in her official capacity.  Second, because ADS is responsible for determining whether or not the BAIIDs continue to transmit the data collected from the drivers to the Department, the harm alleged from the Department continuing to receive the BAIID data is also not redressable by Johnson in her official capacity.

Interlock lacks standing to pursue its substantive due process claim.  Drawing all reasonable inferences in favor of Interlock, the complaint alleges a prospective injury from Interlock's continuing removal as a designated service provider on the Department's list of

---

[1] Interlock does not challenge the district court's holding that its official-capacity procedural due process claim was barred by the Eleventh Amendment.

certified BAIID manufacturers. However, even if Interlock adequately alleged it is injured by its continuing removal from the list, that injury is not redressable by Johnson. Michigan Compiled Laws § 257.625k sets forth the procedures for a BAIID manufacturer to obtain certification of its devices by the state and the Department's requirement to provide drivers a list of certified BAIID manufacturers. The statute does not require the Department to provide a list of service centers available in the state. The manufacturer is the entity that designates its service centers and installers, as well as monitors their compliance with the statute. *See id.* § 257.625k(14), (19). As Interlock's complaint recognizes, the Department issued its summary suspension order because ADS's BAIIDs did not comply with the statute's requirements. When ADS's BAIIDs were decertified, it was removed from the Department's certified BAIID manufacturer list. When ADS's BAIIDs were recertified after ADS's negotiation with the Department, Interlock would have been able to service and install these devices if ADS continued to work with Interlock. For this reason, Interlock has not adequately alleged, and the Michigan statute does not provide, that Johnson is able to or responsible for designating a manufacturer's service provider listed on the certified BAIID manufacturer list. The district court was therefore correct to find that Interlock's complaint fails to adequately allege due process injuries redressable by Secretary Johnson in her official capacity.

Interlock also lacks standing to pursue its unlawful taking claim because Johnson likewise cannot redress the fact that the BAIIDs continue to report the data collected to the Department. In its complaint, Interlock fails to allege that it "owned" the data created by drivers' use of the BAIIDs. The complaint alleges only that Interlock "had [c]onstitutionally-protected use, property, and liberty interests in their BAIIDs [and] the data produced by and housed on their BAIIDs." DE 9, Am. Compl., PageID 265 ¶ 244. Interlock failed to plead that there was a contractual

relationship or other mechanism through which the data produced by the BAIID was owned by Interlock. Without adequately alleging that it had a right to the data produced by the BAIID it owned, Interlock fails to allege an injury-in-fact sufficient to support its unlawful taking claim. With regard to causation and redressability, the complaint states that "the State Defendants are presently using [Interlock's] BAIIDs and data without [Interlock's] consent" and "collecting, interpreting, analyzing and using data produced by and housed on [Interlock's] BAIIDs." *Id.* ¶ 109. As the complaint notes, however, when functioning properly, the devices are set to automatically report the data to the Department. The BAIIDs' reporting of the data to the Department is not an action taken by Johnson or the state. The fact that the BAIIDs are continuing to report the data to the Department is an action taken by ADS, not the Department. Even while Interlock possessed and controlled the devices, ADS was "responsible for reporting the data from [Interlock's] customers directly to the Department." *Id.* ¶ 122. ADS is the entity with the ability to terminate the BAIIDs' data reporting capabilities. The alleged harm from the BAIIDs' continuing reporting of data to the Department is thus not redressable by Johnson.

2.

Interlock has standing to pursue its individual capacity claims. With regard to the due process claims, Secretary Johnson's removal of Interlock from the Department's list of certified BAIID manufacturers without notice and an opportunity for a hearing allegedly caused Interlock to suffer economic injury since it precluded Interlock from installing, servicing, and removing BAIIDs, as well as required it to remove the allegedly defective ADS BAIIDs. Such economic injury is sufficient to satisfy the injury-in-fact requirement. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 294 (6th Cir. 2006). "[A] plaintiff need not have a 'legal right,' or a right protected by the law of property, contract, tort, or statute, to suffer injury-

in-fact." *Id.* at 292 (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). As discussed above, there is still a question whether the alleged economic harm suffered was caused by ADS's decisions, not Johnson's actions, but reading the complaint to provide all inferences in favor of Interlock, it alleges that Johnson removed Interlock from the Department's list, thereby depriving it of the ability to install and service BAIIDs in Michigan. The economic injury alleged by Interlock can be redressed by monetary damages paid by Johnson in her individual capacity.

Interlock has not pled more than conclusions to support its first unlawful takings claim that Johnson physically took possession of its BAIIDs, so it does not have standing to pursue this claim. Mere legal conclusions do not satisfy a plaintiff's burden to adequately plead a cause of action. The complaint must not only include legal conclusions, but must also make factual allegations, which, if accepted as true, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint alleges that ADS and DEI unlawfully converted the BAIIDs purchased and owned by Interlock, stating that ADS and DEI "took control over, and began installing, uninstalling, distributing, servicing, selling, delivering, transfering, altering, leasing, and otherwise using [Interlock's] BAIID units (including the Camera Units) without [Interlock's] permission." DE 9, Am. Compl., ¶ 229(b); *see id.* ¶¶ 224–241, 106. The complaint fails to allege that Johnson or the Department took any action incompatible with Interlock's ownership interest in its BAIIDs.

Interlock's second unlawful takings claim is that it lost money as a result of the Department directing it to remove the decertified BAIIDs from its customers vehicles. As Interlock notes in its complaint, the Department's suspension order directed ADS, not Interlock, to uninstall the decertified BAIIDs from its customers' vehicles. However, Interlock alleges that the Department's press release "instructed customers 'to contact Michigan Interlock to have [their BAIID] removed–

–for free—and have a new device installed by one of five approved manufacturers.'" DE 9, Am. Compl., Page ID 223 ¶ 86. "[C]onstru[ing] the complaint in the light most favorable to the plaintiff," Interlock alleged an economic injury from the deinstallation costs, caused by Johnson directing Interlock to remove customers' BAIIDs at no expense to the customer, and redressable by damages from Johnson. *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013). Thus, Interlock has standing to pursue its unlawful taking claim for the deinstallation costs.

## B.

Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It is not a "mere defense to liability"; the doctrine provides "*immunity from suit*." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Public officials thus are eligible for qualified immunity if (1) they did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). This court may review either prong of the analysis first, and "[i]f either prong is not met, then the government officer is entitled to qualified immunity." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019) (quoting *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018)).

Once a defendant raises a qualified immunity defense, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011). "To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Courtright v. City of Battle Creek*, 839 F.3d

513, 518 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). This court has cautioned that although qualified immunity claims should be resolved early, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Id.* (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). The court reviews the district court's decision that Johnson is entitled to qualified immunity de novo. *Sutton v. Metro. Gov't of Nashville & Davidson Cty.*, 700 F.3d 865, 871 (6th Cir. 2012).

We begin with the second prong of the qualified immunity test: whether the constitutional rights at issue were clearly established. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). At issue is whether it was clearly established that Interlock had a right to notice and an opportunity to be heard when Johnson decertified ADS's BAIIDs and removed Interlock from the Department's certified BAIID manufacturer list, as well as whether Johnson could not direct Interlock to uninstall the decertified BAIID devices without just compensation. We cannot say that "in the light of pre-existing law the unlawfulness [was] apparent." *Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (quoting *Anderson*, 483 U.S. at 640). "[T]he clearly established law must be 'particularized' to the facts of the case," and "in the light of pre-existing law the unlawfulness must be apparent." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson*, 483 U.S. at 640). While there need not be "a case directly on point" for the law to be clearly established, "existing precedent must have placed the statutory or

constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

At the time Johnson acted, no court had declared the Michigan statute unconstitutional, and Johnson acted reasonably in enforcing it. *See Citizens in Charge*, 810 F.3d at 440–41. "When public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core [qualified immunity] inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *Id.* at 441 (quoting *Harlow*, 457 U.S. at 818). A presumption of constitutionality accompanies validly enacted state legislation, "a presumption on which executive officials generally may depend in enforcing the legislature's handiwork." *Id.*

"The enforcement of a presumptively valid law . . . does not automatically entitle officials to qualified immunity. Some laws may be 'so grossly and flagrantly unconstitutional' that any reasonable officer would decline to enforce them." *Id.* at 442 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)). Here, Michigan's law providing manufacturers procedural rights upon decertification of their BAIIDs, but not providing such rights to non-manufacturers is not "so grossly and flagrantly unconstitutional" that Secretary Johnson was unreasonable in enforcing it. Moreover, although the statute at issue did not vest property or liberty interests in the certification of a manufacturer's BAIIDs in entities other than the manufacturer, that decision by the legislature was not unreasonable nor "grossly and flagrantly" unconstitutional.

Johnson's conduct here was reasonable and complied with the Michigan statute she was tasked with enforcing. Interlock has not alleged that it has a right that was clearly established at a particularized level. Interlock cites to cases involving a generalized right to due process when the government deprives a citizen of a property or liberty interest, but these cases do not address the particular right asserted here. Interlock fails to cite a case from the Supreme Court or Sixth Circuit

that clearly establishes that it has a property and liberty interest in the state including it on the list of certified BAIID manufacturers protected by the Due Process Clause. Interlock also fails to cite any Michigan court case determining that it has these alleged rights. Not a single case instructed Johnson to provide Interlock notice or an opportunity for a hearing or required her to include Interlock on the list of certified BAIID manufacturers. Given that Interlock bears the burden of presenting such a case to overcome qualified immunity, this failure is fatal to its position.

Interlock's brief also cites to the general proposition that "[a]n individual's right not to have her real property confiscated by governmental officials for reasons that lack any rational connection to a plausible conception of the public interest has been clearly established for a very long time." CA6 R. 25, Appellant Br., Page ID 37 (quoting *Montgomery v. Carter County*, 226 F.3d 758, 771 (6th Cir. 2000)). Property and liberty rights are not clearly established at such a general level, and Interlock cannot to cite to any "existing precedent [that] ha[s] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

As a public official carrying out her duties under a validly enacted state law that had not been held unconstitutional or otherwise challenged, and that did not include any procedural rights for non-manufacturers, it was not clearly established that Johnson was required to provide notice and an opportunity to be heard, or that her actions would inhibit Interlock's ability to operate in the state. *See Citizens in Charge, Inc.*, 810 F.3d at 440. Thus, Johnson is entitled to qualified immunity on all three claims.

VI.

Because the district court correctly concluded that Interlock lacked standing for its claims against Johnson in her official capacity and that Johnson was entitled to qualified immunity for Interlock's claims against her in her individual capacity, we affirm.

**JOHN K. BUSH, Circuit Judge, concurring.** I concur in the Majority's thoughtful opinion and write separately only to offer the following observations about our holding that Interlock does not have standing to bring its official-capacity substantive due process claims because its injury is not redressable.

I agree that Interlock's alleged injury—its inability to conduct business as a BAIID service provider in Michigan—cannot be remedied unless ADS resumes its contractual arrangement with Interlock. Although this court could conceivably order Secretary Johnson to identify Interlock as ADS's service provider on the State Department's list of BAIID manufacturers (assuming a substantive due process violation were found), that remedy alone would not redress Interlock's alleged injury.

The official-capacity substantive due process claim concerns only one purported harm: Interlock's ongoing omission from the "Ignition Interlock Manufacturers List," which appears on the State Department's website. This manufacturers' list includes the name of each manufacturer and identifies the manufacturer's designated service provider as its point of contact. When Interlock served as ADS's exclusive distributor, Interlock was designated as such on the manufacturers' list. However, after ADS's BAIIDs were summarily de-listed and subsequently re-certified, ADS designated itself as its own service provider on the manufacturers' list and refused to honor the exclusive distributorship agreement.

Interlock has alleged a concrete, particularized injury because, according to the complaint, Interlock has not been able to operate as a BAIID service provider in Michigan since ADS terminated the exclusive distributor agreement and began operating as its own service provider. Further, although a somewhat close question, the complaint also alleges that this injury was caused by Secretary Johnson. To be sure, ADS began its efforts to oust Interlock as its service provider

17

at least as early as September 2017—long before any action by the State Department. However, ADS did not begin to pressure Interlock into signing away its rights as exclusive distributor until after Secretary Johnson decertified ADS's BAIIDs. Further, ADS did not send Interlock the termination of the agreement until negotiations between ADS and the State Department to re-certify the BAIIDs had commenced; and, when those negotiations completed, ADS informed Interlock that it had designated itself as its own service provider at the State Department's request. Taken together, these facts are likely sufficient to suggest a causal connection between the State Department's actions and ADS's decision to cut off its relationship with Interlock.

However, Interlock's alleged injury—the loss of its status as ADS's service provider—is not redressable because this harm cannot be remedied unless ADS—no longer a party to this lawsuit—resumes its contractual arrangement and restores Interlock as its service provider. We have regularly observed that "[r]edressability is typically more difficult to establish where the prospective benefit to the plaintiff depends on the actions of independent actors." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 715–16 (6th Cir. 2015) (citing *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989)); *see Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018). For such a claim, the plaintiff must show "'a meaningful nexus' between the defendant and the asserted injury." *Durham*, 905 F.3d at 434 (quoting *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014)); *see Parsons*, 801 F.3d at 717. Interlock fails to allege such a nexus here.

Even accepting that ADS used the State Department and the summary suspension as a "pretext and justification" to terminate the exclusive distribution agreement, R. 9 at PageID 202 ¶ 6, and further accepting that Secretary Johnson made statements during the negotiations which in part caused ADS to terminate the agreement, there is nothing in the complaint to indicate that ADS would resume its contractual agreement if Secretary Johnson simply added Interlock back to

the manufacturers' list as ADS's designated service provider. Simply put, Secretary Johnson's saying it—that Interlock is ADS's service provider—would not make it so.

Interlock's argument to the contrary assumes that Secretary Johnson's relisting of Interlock as ADS's service provider would provide Interlock with some legal benefit. It would not. The closest Interlock comes to making an allegation of benefit is its contention that its omission from the manufacturers' list "made [Interlock] ineligible to conduct business, receive customers from the [State] Department, or remain in business." R. 9 at PageID 269 ¶ 258. But, upon examination of the governing statute, it is clear that Interlock's omission from the list had no legal significance to Interlock.

The manufacturers' list exists because of Michigan Compiled Laws Annotated § 257.625k(1), which imposes requirements on manufacturers seeking certification and states that "the department shall provide a list of all manufacturers of approved certified devices to each person who is approved to be issued a restricted license that permits the person to drive a vehicle only if equipped with a BAIID." *Id.* § 257.625k(1)(b). To be included on the list, a manufacturer must provide certain documents certifying its compliance, and it must also agree to establish service locations within the state and comply with monitoring and reporting requirements. *See id.* § 257.625k(5).

The 2016 amendments authorize the State Department to "order a summary suspension or revocation of the certification of a manufacturer and its device from the list of approved certified BAIIDs under section 625k" for various reasons. *Id.* § 257.625q(10). It is this authority that Secretary Johnson exercised when she initially de-listed ADS in March of 2018. Based on the statutory language, "revocation of the certification . . . from the list," it is likely that a *manufacturer*'s inclusion on the list itself has legal significance.

However, the same cannot be said for service providers like Interlock. Service providers are subject to a different set of regulatory requirements, set out at Michigan Compiled Laws § 257.625k(14). That subsection imposes myriad obligations on putative service providers, but makes no mention of the manufacturers' list. There is nothing in the statutory language or structure to indicate that a service provider's certification is contingent upon its inclusion in the manufacturers' list. This reading is consistent with the Summary Revocation Order, which removed both ADS and Interlock from the list and ordered that "[t]he certification of Alcohol Detection Systems and its BAIID device, is hereby SUMMARILY SUSPENDED," R. 13-2 at PageID 456, without any discussion of Interlock's certification as a service provider.[1]

To be sure, the complaint does purport to allege that Interlock's certification was contingent upon inclusion on the manufacturers' list, asserting that "[o]nly companies appearing on the list of approved vendors are allowed to install and service BAIIDs in Michigan," R. 9 at PageID 209 ¶ 31; "[b]ecause [Interlock] was removed from the Department's list of approved vendors, [Interlock] was barred from conducting business in Michigan," *id.* at PageID 228–29 ¶ 103; and "[t]he State Department's removal of [Interlock] from its list of approved vendors . . . made [Interlock] ineligible to conduct business, receive customers from the Department, or remain in business," *id.* at PageID 269 ¶ 258. But these conclusory statements are unsupported by specific factual allegations and cannot be credited in light of the plain statutory language.[2]

---

[1] It may be that ADS's inclusion on the list had implications for Interlock. Section 257.625k(14)(A) provides that "[o]nly service centers that are BAIID manufacturer and vendor approved shall install, service, or remove BAIIDs approved for use in this state." It is unclear as to whether such manufacturers must be certified (and thus included on the manufacturers' list) to have authority to approve a service center, but this seems a plausible reading. But the issue is not whether the removal of ADS's certification impacted Interlock's rights, only whether Interlock's continued omission from ADS's entry on the list does.

[2] Counsel suggested at oral argument that Interlock's ability to seek approval as a service center for a different manufacturer may be impacted by its removal as ADS's service center, but the complaint contains no such allegations. The complaint does contain some conclusory statements that Interlock has a legal right to be included in the list and that it was harmed by its removal, including that "[Interlock] held a property interest in their certification and inclusion in the list. Staying on the list and remaining in good standing with the Department was imperative to [Interlock's]

Accordingly, I agree that only ADS can provide relief for Interlock's alleged injury—its ongoing inability to conduct business as ADS's BAIID service provider in Michigan. Interlock's alleged injury is simply not redressable by the relief it seeks from Secretary Johnson. I therefore concur.

---

profitability and its very existence," R. 9 at PageID 210 ¶ 33; "Plaintiffs had a property interest in . . . their certification and inclusion on the approved list of vendors," *id.* at PageID 268–69 ¶ 257; "[t]he State Defendant's actions in . . . removing Plaintiffs from its list of approved BAIID vendors . . . crippled Plaintiffs' business," *id.* at PageID 269 ¶ 259. But these assertions are not supported by any specific factual allegations and are not sufficient to confer standing.