RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0263p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MIKE KOWALL; ROGER KAHN; PAUL OPSOMMER;
JOSEPH HAVEMAN; DAVID E. NATHAN; SCOTT DIANDA;
CLARK HARDER; MARY VALENTINE; DOUGLAS SPADE;
MARK S. MEADOWS,

     *Plaintiffs-Appellants*,

     *v.*

JOCELYN BENSON, in her official capacity as Secretary
of State,

     *Defendant-Appellee*.

No. 21-1129

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cv-00985—Janet T. Neff, District Judge.

Argued: October 20, 2021

Decided and Filed: November 17, 2021

Before: GILMAN, THAPAR, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** John J. Bursch, BURSCH LAW PLLC, Caledonia, Michigan, for Appellants. Erik A. Grill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** John J. Bursch, BURSCH LAW PLLC, Caledonia, Michigan, Christopher M. Trebilcock, CLARK HILL PLC, Detroit, Michigan, Charles R. Spies, Robert L. Avers, DICKINSON WRIGHT PLC, Ann Arbor, Michigan, for Appellants. Erik A. Grill, Heather S. Meingast, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Timothy A. La Sota, TIMOTHY A. LA SOTA, PLC, Phoenix, Arizona, for Amicus Curiae.

---

**OPINION**

---

THAPAR, Circuit Judge.  At the Constitutional Convention, Benjamin Franklin made the case for term limits.  He argued that "in free governments, the rulers are the servants, and the people their superiors and sovereigns.  For the former therefore to return among the latter was not to *degrade*, but to *promote* them."  2 *The Records of the Federal Convention of 1787*, at 120 (Max Farrand ed., 1911) (cleaned up).  The people of Michigan had the same idea.  They enacted term limits for their state legislators.  Yet some veteran legislators didn't take their "promotion" well.  They sued, claiming term limits violate their constitutional rights.  But it's not our place to second-guess how Michiganders choose to design their state legislature.

I.

In 1992, a group of Michigan voters decided they wanted term limits for state legislators, state executives, and members of Congress.  But to do so, they needed to amend Michigan's Constitution.  So they drafted a petition, got the petition on the ballot, and won—58.8% of voters approved the measure.  Term limits then became part of the Michigan Constitution (six years in Michigan's House of Representatives and eight years in the Michigan Senate).

When the amendment took effect, some voters sued, arguing that the term limits violated their rights under the First and Fourteenth Amendments to the United States Constitution.  *See Citizens for Legis. Choice v. Miller*, 144 F.3d 916, 918 (6th Cir. 1998).  But our court disagreed and upheld Michigan's term limits for state legislators.[1]  *Id.* at 925.

Now, a bipartisan group of veteran legislators challenges the term-limit provision again. They essentially rehash the same claims that voters brought more than twenty years ago: that the term limits violate their ballot-access and freedom-of-association rights under the First and Fourteenth Amendments.  They also challenge the term limits under two procedural provisions

---

[1]As for the federal term limits, an intervening Supreme Court case had deemed them unconstitutional. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).

of the Michigan Constitution. The district court granted Michigan's motion for summary judgment, and the legislators appealed.

## II.

Before reaching the merits, we must decide whether we have jurisdiction to hear this case. In 1976, the Supreme Court dismissed a challenge to West Virginia's state term limits "for want of a substantial federal question." *Moore v. McCartney*, 425 U.S. 946, 946 (1976). Does this mean we lack jurisdiction? We have asked the question in the past, but have never answered it. *See Miller*, 144 F.3d at 919–20; *see also Bates v. Jones*, 131 F.3d 843, 847–50 (9th Cir. 1997) (en banc) (O'Scannlain, J., concurring). So we answer it now: We have jurisdiction.

History reveals that *Moore*'s language is a relic of the Court's once-dominant appeal-by-right process. Until the modern certiorari process took root in 1988, state-court rulings involving federal questions—like *Moore*—could be appealed to the Supreme Court as a matter of right. *See* Act of June 27, 1988, Pub. L. No. 100-352, 102 Stat. 662 (amending 28 U.S.C. § 1257). The Court, faced with a much larger docket than it has today, needed to resolve these cases efficiently. And summary dismissals seemed to be the Court's favored workhorse. *See generally* Jonathan L. Entin, *Insubstantial Questions and Federal Jurisdiction: A Footnote to the Term-Limits Debate*, 2 Nev. L.J. 608 (2002) (suggesting that summary dismissals were used to dispose of frivolous appeals-by-right, much as the Court uses denials of certiorari today).

This understanding comports with how our circuit has treated summary dismissals. In *DeBoer v. Snyder*, we found that the Supreme Court's summary dismissal in an earlier case controlled the merits analysis. 772 F.3d 388, 400–01 (6th Cir. 2014) (examining *Baker v. Nelson*, 409 U.S. 810 (1972)). We did not question whether the dismissal "for want of a substantial federal question" deprived us of jurisdiction. *Id.* And we see no reason to reach a different conclusion here.

Because the legislators raise claims under the Federal Constitution, we have jurisdiction to hear their case. *See* 28 U.S.C. § 1331.

III.

With our jurisdiction secure, we turn to the merits.  The legislators here sue in their capacities as both candidates and voters, arguing that Michigan's term limits violate their constitutional rights to freedom of association and ballot access.  But precedent bars their claims as voters.  *See Miller*, 144 F.3d at 925.  And as candidates, they hold no greater protection than the voters they wish to represent.  Thus, we affirm on both claims.

A.

We first consider the legislators' claims as candidates.  They claim that Michigan's Constitution violates their federal First and Fourteenth Amendment rights by barring experienced candidates from running for state legislative office.  And they maintain that these claims must be analyzed, at the very least, under the *Anderson-Burdick* framework that we ordinarily use for election regulations.  We disagree.

Courts use *Anderson-Burdick*'s sliding-scale framework to assess election-related ballot-access and freedom-of-association claims.  Under that test, a court must:  (1) evaluate whether an election restriction imposes a severe or incidental burden; (2) assess the state's interests in the restriction; and (3) ask if the state's interests make the burden necessary. *See Miller*, 144 F.3d at 920–21.  And then it moves on to apply either a rational-basis or a strict-scrutiny standard of review.  *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).  Yet *Anderson-Burdick* is inapposite in this context.

In *Miller*, we explained why.  There, we noted that the election procedures we review under *Anderson-Burdick* "implicate rights and interests . . . fundamentally different from" those involved in term-limit challenges.  144 F.3d at 924 (citing *Bates*, 131 F.3d at 855, 858–59 (Rymer, J., concurring)).  *Anderson* and *Burdick* considered rights of voters to cast their ballots effectively and to associate for political ends.  *Anderson v. Celebrezze*, 460 U.S. 780, 787–88 (1983); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).  Indeed, in articulating the *Anderson-Burdick* framework, the Supreme Court held that it should be used by courts "considering a challenge to a state election law." *Burdick*, 504 U.S. at 434.  But term limits are not state election laws.

So what are they? Term limits are the state's attempt to set qualifications for its officeholders. Indeed, when a state enacts term limits, it chooses a "citizen legislature over a professional legislature." *Miller*, 144 F.3d at 924. In other words, term limits let Michigan define its own "republican form of government" based on the type of representative its citizens can elect. *See* U.S. Const. art. IV, § 4; *Miller*, 144 F.3d at 924. Rather than keeping eligible candidates off the ballot—like the prototypical ballot-access or freedom-of-association case—term limits restrict eligibility for office. *See Bates*, 131 F.3d at 859 (Rymer, J., concurring). So term limits operate independently from ballot-access restrictions. Like any other qualification, they limit which individuals are eligible to hold office.

The legislators argue that the Supreme Court's decision in *U.S. Term Limits, Inc. v. Thornton* requires us to analyze term limits as ballot-access restrictions. That case involved a provision of the Arkansas Constitution that set term limits for its federal representatives in Congress. 514 U.S. 779 (1995). Yet *Thornton* turned not on ballot-access analysis, but on the Federal Constitution's Qualifications Clauses, which, as the Court held, created an exclusive list of qualifications for federal legislators. *Id.* at 783. To the extent the Court discussed ballot access, it was because Arkansas framed its term-limit law as a ballot-access provision—unlike Michigan. *See id.* at 829. But even so, the Court came to the same conclusion: Term limits are a qualification for office. *See id.* at 837 ("Term limits, like any other qualification for office, unquestionably restrict the ability of voters to vote for whom they wish.").[2]

This qualification gives us no reason to apply heightened scrutiny, because candidates do not have a fundamental right to run for office. *Clements v. Fashing*, 457 U.S. 957, 963 (1982) ("Far from recognizing candidacy as a fundamental right, we have held that the existence of barriers to a candidate's access to the ballot does not of itself compel close scrutiny." (cleaned up)); *Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989) ("Running for office is not a

---

[2]Because qualifications for office don't restrict ballot access, *Anderson-Burdick* is unworkable when it comes to term-limit challenges. How are courts to determine whether a qualification for office is a severe or incidental burden? Must it burden voters, or only a would-be candidate? And how does it square with our precedent that candidates have no right to run for office? *See Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989). The answers are far from clear.

fundamental right." (cleaned up)).  Without such a fundamental right at issue, we revert to the baseline:  rational basis.

Courts routinely apply rational basis when officeholders' qualifications are at stake.  *See Gregory v. Ashcroft*, 501 U.S. 452, 470–71 (1991) (reviewing age limit for state judges); *Clements*, 457 U.S. at 968–71 (reviewing candidacy restrictions for existing officeholders); *Zielasko*, 873 F.2d at 959 (reviewing age limit for state judges).  And that makes sense—none of these qualifications for office implicate a fundamental right.  Indeed, as explained above, the last time the Supreme Court was faced with a challenge like this one to state-office term limits, it summarily dismissed the case.  *Moore*, 425 U.S. at 946 (dismissing an appeal from *State ex rel. Maloney v. McCartney*, 223 S.E.2d 607 (W. Va. 1976)).

One final reason counsels for rational basis here.  Restrictions on who may hold state elective office "lie at the heart of representative government."  *Gregory*, 501 U.S. at 462–63 (cleaned up).  A state "defines itself as a sovereign" by structuring its government and choosing qualifications for its officeholders.  *Id.* at 460; *see Sugarman v. Dougall*, 413 U.S. 634, 647–48 (1973); *Boyd v. Nebraska ex rel. Thayer*, 143 U.S. 135, 161 (1892).  Indeed, the Guarantee Clause and the Tenth Amendment explicitly protect these rights under the Constitution. *Gregory*, 501 U.S. at 463.  To respect states' sovereign authority, federal review must not "be so demanding where we deal with matters resting firmly within a State's constitutional prerogatives."  *Sugarman*, 413 U.S. at 648.  As qualifications for office fall squarely in that camp, rational basis is appropriate.

Thus, we ask whether the limits are rationally related to a legitimate government interest. They are.  Indeed, Michigan has several legitimate government interests in enacting term limits. First among them?  Its sovereign interest in structuring its government as it sees fit.  *See Miller*, 144 F.3d at 923 (citing *Gregory*, 501 U.S. at 460).  According to Michigan, term limits can also reduce political careerism and check special interests.

The legislators counter that although these are legitimate government interests, there are less restrictive means of achieving turnover in the state legislature to serve those interests. But Michigan's term limits don't need to be the least restrictive means possible.  They only need

to be rationally related to their purported goal: electing a citizen legislature.  And a lifetime ban on legislators who have served two or three terms in the state Senate or House is indeed rationally related to that interest—it stops career legislators from keeping state office.  So term limits pass rational-basis review.

*          *          *

The legislators also argue that because candidates have greater access to media reporting than others do, restricting their eligibility for office creates a First Amendment speech claim.  To be sure, candidates—like everyone else—have a right to speech.  But they do not have a right to the specific platforms for speech that they identify, like media coverage and candidate debates.  And any right to appear on the particular platforms afforded only to candidates is null—again, because would-be candidates, like the legislators here, have no fundamental right to run for office.  *See Zielasko*, 873 F.2d at 959.  Thus, their claims as candidates fail.

B.

The legislators also challenge the term limits as voters, once again arguing that their First and Fourteenth Amendment rights are abridged because they can't vote for experienced candidates.  So we now decide a question we left open in *Miller*: which standard should apply to term-limit challenges like these.  144 F.3d at 925.  Because the voters' claims failed under any standard, the *Miller* court considered both *Anderson-Burdick* and a more deferential approach. *Id.* at 921–24.  But for the same reasons set forth above, we adopt rational-basis review for most voter challenges to candidate qualifications.

Just as candidates have no fundamental right to run for office, voters have no fundamental right to "vote for a specific candidate or even a particular class of candidates." *Id.* at 921 (citation omitted).  This is why the *Miller* court upheld these same term limits more than twenty years ago.  And it is why the above analysis applies equally to voter claims.  Term limits are still qualifications for office.  They still go to the heart of state sovereignty.  And they still implicate no fundamental right for *Anderson-Burdick* to balance.

In other words, the legislators' two claims—based on their status as voters and as candidates—rise and fall together.  Here they fall.  Just like their candidate claims, their voter claims fail on rational-basis review for the same reasons.

IV.

With the federal claims resolved, we are left with two state-law claims: whether the term-limit amendment is procedurally defective and whether it violates the Michigan Constitution's Title-Object Clause.  But when a federal court dismisses all pending federal claims before trial, as the district court did here, it is usually best to allow the state courts to decide state issues. *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996); *see also* 28 U.S.C. § 1367(c).  And this case is no exception.  Indeed, declining supplemental jurisdiction is particularly important here, because the parties raise novel questions of state constitutional law.  Those questions are best left for state courts to answer in the first instance—federal judges must not "needlessly decid[e]" such issues.  *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008).  There was no need for the district court to consider the plaintiffs' state-law claims.  So we vacate its decision and remand for the district court to dismiss those claims without prejudice. *See Musson Theatrical*, 89 F.3d at 1257.

\*       \*       \*

More than twenty years ago, the people of Michigan chose a citizen legislature, not a professional one.  Now, legislators with years of experience seek to use the federal courts to get around their state's sovereign choice.  But it's not our place to intervene on their behalf.  If they want to change the law, they'll have to do that at the ballot box.

For the reasons stated above, we affirm in part, vacate in part, and remand.