NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0425n.06
No. 23-1826

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES R. FOUTS, | ) | |
| Plaintiff-Appellant, | ) | **FILED** |
| | ) | Oct 04, 2023 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| WARREN CITY COUNCIL, *et al.*, | ) | O R D E R |
| Defendants-Appellees. | ) | |
| | ) | |

Before: CLAY, McKEAGUE, and NALBANDIAN, Circuit Judges

Plaintiff James R. Fouts, Mayor of Warren, Michigan, filed suit against Defendants Warren City Council ("City Council"), Warren City Election Commission ("Election Commission"), Anthony G. Forlini, in his official capacity as Macomb County Clerk ("County Clerk"), and Sonja D. Buffa, in her official capacity as Warren City Clerk ("City Clerk") (collectively, the "Defendants") requesting that a special election be conducted for the City of Warren mayoral race and that Plaintiff's name be placed on the ballot. The district court dismissed Fouts' complaint for failure to state a cognizable claim, and Fouts appealed. Pending before the Court is Plaintiff's motion for expedited review of this appeal, which Defendants oppose. For the reasons set forth below, we **DENY** that motion.

## I.    BACKGROUND

Fouts, who is currently in his fourth term of service as the Mayor of Warren, seeks to run for a fifth term in the November 7, 2023 general election. However, in 2020, Warren's voters passed an amendment to the City's Charter that imposed a three-term or twelve-year limit on

No. 23-1826, *Fouts v. Warren County Council, et al.*

Warren's mayors, bringing the mayoral term limits in line with those of other City office holders.[1] Notwithstanding this amendment, Fouts began the process of placing his name on the ballot as a mayoral candidate for the 2023 election.

In early 2023, the City Council filed a mandamus action in state court against the Election Commission, County Clerk, and City Clerk, seeking to prohibit them from including Plaintiff's name on the 2023 ballot. The state trial court found that Fouts could run for a fifth term as mayor because it concluded that the Charter amendment did not clearly apply retroactively to include Fouts' previous four terms as mayor in computing term limits. *Warren City Council v. Buffa*, No. 2023-000611-AW, 2023 WL 3766706, at *5 (Mich. Cir. Ct. Mar. 23, 2023). On April 21, 2023, the Michigan Court of Appeals reversed, finding that the text of the Charter amendment clearly included Plaintiff's prior four terms. *Warren City Council v. Buffa*, No. 365488, 2023 WL 3046530, at *5 (Mich. Ct. App. Apr. 21, 2023), *appeal denied*, 989 N.W.2d 679 (Mich. 2023). Accordingly, the court ordered the City Clerk to "immediately disqualify Mayor Fouts as a candidate for mayor in 2023." *Id.* at *11. On May 17, 2023, the Michigan Supreme Court denied defendants' application for leave to appeal. *Warren City Council v. Buffa*, 989 N.W.2d 679 (Mich. 2023).

On August 2, 2023, six days before the Warren mayoral primary election, Fouts filed the instant case with the United States District Court for the Eastern District of Michigan, alleging that his First and Fourteenth Amendment rights have been violated by the 2020 amendment to the City's Charter and his subsequent exclusion from the 2023 mayoral ballot. The district court

---

[1] As amended, the pertinent part of Charter reads as follows:

> A person shall not be eligible to hold the position of mayor, city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that office.

Warren City Charter, § 4.3(d).

granted Defendant City Council's and Defendant County Clerk's motions to dismiss,[2] dismissed Plaintiff's claims in their entirety, and denied as moot Plaintiff's motion for expedited review. Plaintiff timely appealed.

## II. DISCUSSION

Local Rule 27(f) requires that a motion to expedite an appeal show "good cause." 6 Cir. R. 27(f). Because Plaintiff has failed to show that he acted expeditiously in filing his federal lawsuit, and because he has failed to show that he is likely to succeed on the merits—particularly given the extraordinary relief he requests from this Court—he has failed to show good cause to expedite review.

### 1. Timeliness and Relief Requested

In the context of injunctive relief, the Supreme Court has cautioned courts not to alter established election procedures when an election is imminent because "[c]ourt orders affecting elections . . . can themselves result in voter confusion" and, "[a]s an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). This Court has acknowledged that these concerns are particularly salient when the plaintiff has "unreasonably delayed bringing his claim." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). In this case, Plaintiff's excessive delay in bringing his federal lawsuit and the extreme relief he requests from this Court weigh against granting his motion to expedite review.

As stated, Plaintiff filed his federal lawsuit just six days before the primary election was held for the 2023 Warren mayoral election; however, he has known that he would not appear on the primary ballot since, at the latest, May 17, 2023, the date that the Michigan Supreme Court

---

[2] Defendants Election Commission and City Clerk filed an answer, rather than a motion to dismiss, in which they described their participation in the case as "merely procedural in nature for purposes of expedient execution of a Court order." Answer, R. 23, Page ID #208.

denied leave for the defendants to appeal in the state litigation. Because of this delay, the district court, even when acting quickly,[3] did not rule on Plaintiff's claims until September 5, 2023, almost one month after the primary election was held.

On appeal, Plaintiff asks this Court to order a special election for the Warren mayoral race, separate from the scheduled November 7, 2023 general election, that would include all of the candidates who participated in the August 8, 2023 primary, as well as Plaintiff. Because of Plaintiff's months'-long delay in seeking relief from a federal court, he is now asking this Court for extraordinary relief—to nullify the votes of the Warren citizens who participated in the 2023 mayoral primary election, and to order election officials in Warren to hold an entirely separate election for mayor. Further confirming the extraordinary nature of the relief requested, Defendant City Council has represented that ballots for the general election have already been printed, as state law requires them to be printed over a month before the general election to ensure that they will be promptly mailed to absentee voters and members of the military.

Requiring a special election to be held at this stage of the election cycle could certainly cause voter confusion, inasmuch as the primary elections have already been held. It would also unduly burden the Warren election officials who would have to run a special election and print entirely new ballots for the general election. Plaintiff does not meaningfully respond to this concern, but instead argues only that certain Defendants, such as the City Council, do not run Warren's elections, and that, regardless of the prejudice to the other Defendants, this Court has the authority to order a special election. Moreover, Plaintiff never addresses the prejudice that other

---

[3] Although the district court denied Plaintiff's motion for expedited review as moot, this Court notes that it produced its Opinion and Order dismissing Plaintiff's claims without delay. Defendants City Council and County Clerk filed their motions to dismiss on August 7, 2023, and August 9, 2023, respectively, and they were not fully briefed until August 22, 2023. The district court issued a thorough written ruling just two weeks later.

candidates for mayor, particularly those who have already run in the primary and secured a spot on the general election ballot, would face if this Court were to require a special election.

## 2. Likelihood of Success on Appeal

Plaintiff has further failed to show good cause for expedited review, as he has not demonstrated that he is likely to succeed on appeal. As an initial matter, Plaintiff's motion to expedite contains no legal arguments as to the merits of his appeal, other than emphasizing the importance of the constitutional right to vote and Plaintiff's right to run as a candidate for office. Upon review of Plaintiff's opening brief, he has not demonstrated that the district court erred in dismissing his claims under the First and Fourteenth Amendments.

Plaintiff argues that the district court improperly reviewed his First and Fourteenth Amendment claims using rational basis scrutiny, when it should have analyzed them under a heightened level of scrutiny pursuant to the *Anderson-Burdick* balancing test that is generally applied to election-related issues. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). However, this Court has previously held that rational basis review, not the *Anderson-Burdick* balancing test, applies to challenges to laws governing term limits for office. *Kowall v. Benson*, 18 F.4th 542, 547–48 (6th Cir. 2021). Plaintiff argues that he does not challenge the constitutionality of the term limits themselves, "but only as applied retroactively to himself," and that the *Anderson-Burdick* test applies because his claim is a challenge to ballot access, rather than a term limit law. Pet'r's Br. ECF No. 9, 12, 14. This argument fails because this Court has held that challenges to term limits receive rational basis review because, "[r]ather than keeping eligible candidates off the ballot—like the prototypical ballot-access or freedom-of-association case—term limits restrict eligibility for office" by defining candidates' necessary

qualifications.[4]  *Kowall*, 18 F.4th at 547 (citation omitted).  In this case, Plaintiff's challenge of the retroactive application of the term limit law to him is a challenge to Warren's enacted eligibility requirements for the mayoral ballot, and rational basis review accordingly applies.

The Charter amendment in question survives rational basis review.  Although generally, "the burden falls entirely to Plaintiff to show there is no rational basis," *Club Italia Soccer & Sports Org. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006), *overruled on other grounds as recognized by Davis v. Prison Health Servs.*, 679 F.3d 433, 442 n.3 (6th Cir. 2012), in proposing the ballot initiative that would lead to the Charter amendment, the City Council explicitly acknowledged "that a governmental system with a balanced distribution of power would be served best by equal term limits for all elected officials," *Buffa*, 2023 WL 3046530, at *2. Plaintiff argues that the law does not achieve this goal because, by restricting Warren officials to the "greater of three (3) complete terms or twelve (12) years," it permits officials to resign the day before their terms end and evade the amendment's term limits.  Warren City Charter, § 4.3(d). This highly speculative situation does not show that the amendment was passed without any rational basis, and it does not show that Plaintiff has met his burden to establish that the City Council had no rational basis in enacting it.  *See Kowall*, 18 F.4th at 548 (finding a rational basis for a term-limit provision by a government's "interest in structuring its government as it sees fit").

Plaintiff also argues that the district court erred in dismissing his Fourteenth Amendment due process claim because it found that he did not have a property interest in holding office and

---

[4] The only case law cited by Plaintiff to show that his claim falls under the "ballot-access" line of cases, such as those concerning signature requirements or filing deadlines for candidacy, involved restrictions on independent candidates' or minor political parties' access to the ballot. *Graveline v. Benson*, 992 F.3d 524, 535–36 (6th Cir. 2021); *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691 (6th Cir. 2015).  These types of restrictions receive heighted scrutiny, in part, because the "Supreme Court instructs us to distinguish between burdens that restrict political participation equally and burdens that 'fall[] unequally on new or small political parties or on independent candidates.'" *Graveline*, 992 F.3d at 535 (quoting *Anderson*, 460 U.S. at 793–94).  Moreover, neither of these cases involved a retroactive application of a statute, and neither contradict this Court's clear holding that term-limit laws receive rational basis scrutiny.

found that Plaintiff did not suffer a legal disability from the counting of his previous four terms in office in determining his eligibility to run for a fifth term. "An individual 'must establish that [he or] she has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause' before being allowed to raise a Due Process challenge." *Tomaszczuk v. Whitaker*, 909 F.3d 159, 164 (6th Cir. 2018) (citation omitted). On appeal, Plaintiff argues that he never contended he had a property interest in being a candidate for mayor, nor does he need to do so to prevail on his due process claim; however, the only cases Plaintiff cites in support of this argument discuss the presumption against retroactivity, which, although it has its roots in the Due Process Clause, is a rule of statutory construction, not constitutional analysis. *See Bank Markazi v. Peterson*, 578 U.S. 212, 228 (2016) ("As we explained in *Landgraf v. USI Film Products*, 511 U.S. 244, 267 (1994), the restrictions that the Constitution places on retroactive legislation 'are of limited scope' . . . ."). Because Plaintiff has not argued that he has a liberty or property interest in the ability to run for mayor, he likely cannot prevail on his due process challenge.

Plaintiff also argues that his inability to run for mayor of Warren constitutes a "legal disability," and that it violates due process to impose this disability retroactively on him. As in the district court, he has not cited any cases that have found that prohibiting an individual from holding office constitutes a legal disability in violation of the Due Process Clause. Instead, he cites cases that label the right to hold public office as a "civil right," and a subsequent case that labels the loss of the right to carry a firearm as a "legal disability." *See, e.g.*, *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990); *United States v. Young*, 766 F.3d 621, 623 (6th Cir. 2014). None of the cases cited by Plaintiff show that a law imposing term limits that effectively

prohibit Plaintiff from holding a certain office imposes a legal disability in violation of the Due Process Clause.[5]

Finally, Plaintiff claims that the district court erred in dismissing his Fourteenth Amendment equal protection challenge because it found that he had not alleged a sufficient comparator and because it did not consider Plaintiff's claim that he was "a class of one." The Equal Protection Clause implicates "governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect class, or (3) intentionally treats one differently from others similarly situated without any rational basis for the difference." *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527 (6th Cir. 2023) (citing *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005)). The district court concluded that Plaintiff did not allege a burden to a fundamental right or targeting of a suspect class, so it required him to show that he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). On appeal, Plaintiff only points to one similarly situated comparator who he claims served three terms on the Warren City Council but was treated differently than him because he was permitted to run for another term. However, this individual, in fact, served only *two* complete terms, and resigned almost three years early from his third term to serve in the Michigan House of Representatives. *Boike v. Green*, No. 365681, 2023 WL 3588168, at *1 (Mich. Ct. App. May 22, 2023). Accordingly, he is not similarly situated to Plaintiff, nor was he treated differently than Plaintiff, as he could clearly run for another term under Warren's newly enacted term limit law.

---

[5] Plaintiff also stated that the district court erred by declining to consider whether the Charter amendment violated Plaintiff's "federal constitutional rights against retroactive legal disabilities" because the district court stated that it would not review the Michigan Court of Appeals decision that the law applied retroactively, Pet'r's Br., ECF No. 9, 28; however, as described above, the district court thoroughly considered Plaintiff's arguments as to how the Charter amendment violated his federal constitutional rights.

Moreover, as previously stated, the amendment, as applied to Plaintiff, passes the low threshold for rational basis review. *See Club Italia*, 470 F.3d at 299. Plaintiff has not established that he is likely to succeed on appeal as to his equal protection claim.

### III. CONCLUSION

For the reasons set forth above, this Court **DENIES** Plaintiff's motion for expedited review.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk