RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JAMES R. FOUTS,

                 *Plaintiff-Appellant*,

    *v.*

WARREN CITY COUNCIL; SONJA BUFFA; ANTHONY
FORLINI; CITY OF WARREN ELECTION COMMISSION,

                 *Defendants-Appellees*.

> No. 23-1826

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cv-11868—George Caram Steeh III, District Judge.

Decided and Filed:  April 2, 2024

Before: CLAY, McKEAGUE, and NALBANDIAN, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:**  Nabih H. Ayad, AYAD LAW, PLLC, Detroit, Michigan, for Appellant.  Mary Massaron, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee Warren City Council.  Mary Michaels, CITY OF WARREN, Warren, Michigan, for Appellees Sonja Buffa and City of Warren Election Commission.  Frank Krycia, MACOMB COUNTY, Mount Clemens, Michigan, for Appellee Anthony Forlini.

───────────────

**OPINION**

───────────────

CLAY, Circuit Judge.  Plaintiff James R. Fouts, the former mayor of Warren, Michigan, appeals the district court's dismissal of his complaint against Defendants Warren City Council, Warren City Election Commission, Anthony G. Forlini, in his capacity as the Macomb County Clerk, and Sonja D. Buffa, in her capacity as the Warren City Clerk.  Fouts brought claims under

42 U.S.C. § 1983, alleging that Defendants violated his First, Fifth, and Fourteenth Amendment rights by retroactively applying a new term-limit provision to bar him from running for a fifth term as Warren's mayor. For the reasons set forth below, we **AFFIRM** the district court's dismissal of Fouts' complaint.

## I. BACKGROUND

At the time of his complaint, Fouts was serving his fourth term as mayor of Warren, Michigan, having been in office since 2007. In 2020, Warren voters passed an amendment to Warren's city charter that shortened the existing term limits for mayor and brought mayoral term limits in line with term limits for other City offices. Specifically, the amended charter provides that "[a] person shall not be eligible to hold the position of mayor, city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that office." Warren City Charter, § 4.3(d). Despite the new charter amendment, Fouts initiated the process of placing his name on the ballot to run for a fifth term as mayor in the 2023 election.

In February 2023, the Warren City Council ("City Council") filed a complaint in Michigan's circuit court, seeking to compel Buffa and the Warren City Election Commission ("Election Commission") to remove Fouts' name from the 2023 mayoral ballot. *See Warren City Council v. Buffa*, No. 2023-000611-AW, 2023 WL 3766706, at *1 (Mich. Cir. Ct. Mar. 23, 2023) *rev'd* No. 365488, 2023 WL 3046530, at *11 (Mich. Ct. App. Apr. 21, 2023). The Michigan trial court held that Fouts could run for mayor of Warren in 2023. *Warren City Council*, 2023 WL 3766706, at *5–6. It found that the charter amendment did not clearly intend to include Fouts' prior terms as mayor in assessing whether the new three-term limit barred him from office. *Id.* The Michigan Court of Appeals reversed, ordering Buffa and the Election Commission to disqualify Fouts from the 2023 mayoral race. *See Warren City Council*, 2023 WL 3046530, at *11. The Court of Appeals found that the plain language of the charter amendment meant that Fouts' prior terms counted in calculating whether he had exceeded the new three-term limit. *Id.* at *5. The Michigan Supreme Court declined to hear the case. *Warren City Council v. Buffa*, 989 N.W.2d 679 (Mich. 2023) (mem.).

In August 2023, Fouts filed the instant case in federal court. He brought claims under 42 U.S.C. § 1983, alleging that Defendants violated his First Amendment rights to free expression and association, his Fifth Amendment right to due process of law,[1] and his Fourteenth Amendment right to equal protection under the law. He sought declaratory relief and monetary damages, and requested that the district court decertify the results of the 2023 mayoral primary election and order a special election that would include Fouts on the 2023 ballot. The City Council and Forlini each moved to dismiss Fouts' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] The district court found that it had subject matter jurisdiction over Fouts' complaint, but dismissed the complaint in its entirety because it failed to state a claim upon which relief could be granted.

Specifically, the district court rejected Defendants' arguments that Fouts' complaint amounted to an attempt to overturn the state court's judgment, which, if true, would deprive the district court of subject matter jurisdiction. *See* 28 U.S.C. § 1257; *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *D. C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). The so-called *Rooker-Feldman* doctrine only applies in the "limited circumstances" when "state-court losers" bring actions in federal court "complaining of injuries caused by state-court judgments" and "inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 291 (2005). In this case, the district court correctly found that Fouts' constitutional challenge to the purportedly retroactive application of the term-limit amendment did not require it to review and reject the state court judgment. Although Fouts' complaint, at points, took issue with the Michigan Court of Appeals' decision, as the district court correctly noted, the ultimate source of Fouts' injury in this federal action was not the state court judgment, but Defendants' initial proposal of the term-limit amendment and subsequent application of the term-limit amendment to include Fouts' prior terms as mayor. Because this

---

[1]Although Fouts' complaint alleges a violation of his Fifth Amendment right to due process, as the district court properly noted, he only alleges unlawful actions by the state of Michigan, bringing his claims under the protections of the Fourteenth, rather than the Fifth, Amendment. *See Scott v. Clay County*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Accordingly, we analyze his due process challenge under the Fourteenth Amendment.

[2]Defendants Buffa and the Election Commission filed an answer in which they described their role in this litigation as "merely procedural in nature for purposes of expedient execution of a Court order." Answer, R. 23, Page ID #208.

constitutional challenge would not require a review or a rejection of the state court's judgment interpreting the term-limit amendment, the district court correctly applied the *Rooker-Feldman* doctrine and found that it did not bar jurisdiction over Fouts' claims.

Fouts timely appealed the district court's judgment, and asked this Court for expedited review of this appeal. We entered an order on October 4, 2023, denying Fouts' request for expedited review because Fouts had unreasonably delayed filing his federal lawsuit and because he was unlikely to succeed on the merits of his appeal. We now fully consider the merits of Fouts' appeal, having the benefit of full briefing from the parties. Defendants urge us to uphold the district court's dismissal of Fouts' complaint on the merits, and alternatively argue that we should affirm the district court's dismissal of Fouts' complaint based on the principle "that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020).

## II. DISCUSSION

### A. Standard of Review

We review *de novo* the district court's dismissal of a complaint for its failure to state a claim. *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017). We accept all of the complaint's factual allegations as true and determine whether these facts sufficiently state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

### B. Analysis

#### 1. Mootness

Because Fouts requests relief tied in part to the 2023 Warren mayoral race—an election that has come and gone—we first consider whether his appeal is moot. Although no party raised this question, we must assure ourselves of our own jurisdiction to hear a case, and, accordingly, may raise the question of mootness *sua sponte*. *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993). A case may become moot at any stage of litigation "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."

*Graveline v. Benson*, 992 F.3d 524, 533 (6th Cir. 2021) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

In this case, even if Fouts' prospective relief has been mooted by the occurrence of the 2023 mayoral election, Fouts' request for monetary damages ensures our jurisdiction. A request for monetary damages may continue to present a live controversy, even when a plaintiff's claim for prospective relief is mooted. *See Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 387 (6th Cir. 2005) ("[T]he existence of a damages claim ensures that this dispute is a live one and one over which Article III gives us continuing authority.").

Given our jurisdiction based on Fouts' request for monetary damages, we need not decide whether his requests for prospective relief are moot. We note, however, that his claim for injunctive relief—which requested that he be permitted to run as a candidate in the 2023 Warren mayoral election—is likely mooted by the occurrence of that election. *See Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005). Nevertheless, Fouts' request for declaratory relief likely remains live by virtue of an exception to mootness for disputes capable of repetition yet evading review. "This exception applies when '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Election disputes readily meet the first prong of this test as, generally, "litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election." *Id.* The second prong is satisfied if the controversy is "*capable* of repetition" not whether "a recurrence of the dispute [is] more probable than not." *Honig v. Doe*, 484 U.S. 305, 319 n.6 (1988) (emphasis in original). In this case, Fouts seeks a declaratory judgment that Defendants' decision to apply the term-limit amendment to include his prior terms served as Warren mayor violates his constitutional rights. Although the 2023 Warren mayoral election has passed, and although Fouts has not explicitly indicated in his complaint that he seeks to run for a fifth term as mayor in a future election, such an explicit statement is not necessary to show that it is "reasonable to expect that he will do so." *Lawrence*, 430 F.3d at 371. Because the term-limit amendment remains valid and applicable to Fouts, and because it is reasonable to believe that he will seek to run for a fifth term in the future

if permitted, Fouts' request for declaratory relief likely continues to present a live case or controversy over which we have jurisdiction.

## 2. First Amendment

Fouts first argues that Defendants violated his First Amendment rights to free expression and association by applying the charter amendment to him retroactively and preventing him from running for a fifth term as mayor. A potential candidate for office may bring a challenge to a state term-limit law under the First Amendment, which is made applicable to the states through the Fourteenth Amendment. *See Kowall v. Benson*, 18 F.4th 542, 546–47 (6th Cir. 2021).

Fouts argues that we must apply the sliding-scale framework described in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), to evaluate his First and Fourteenth Amendment claim. The *Anderson-Burdick* framework is typically the appropriate test "[w]hen deciding whether state election laws violate a plaintiff's associational rights and the right to vote effectively under the First and Fourteenth Amendments." *Graveline*, 992 F.3d at 534. A court using this sliding scale approach applies varying levels of scrutiny to state election laws depending on the severity of the burden on an individual's constitutional rights. *See Green Party of Tenn. v. Hargett*, 791 F.3d 684, 693 (6th Cir. 2015).

However, we have held that the *Anderson-Burdick* framework is "inapposite" when a plaintiff brings a challenge to a term-limit law. *Kowall*, 18 F.4th at 547. This is because term-limit laws define a candidate's eligibility for office, whereas "prototypical ballot-access or freedom-of-association case[s]" challenge laws that "keep[] eligible candidates off the ballot" or otherwise limit voters from casting their votes for eligible candidates. *Id.* These cases are subjected to *Anderson-Burdick*'s sliding scale framework because they burden fundamental rights, such as the right of eligible voters to cast their votes effectively. *See Anderson*, 460 U.S. at 787. By contrast, term-limit laws, which only restrict the class of individuals eligible to run for office, do not burden a fundamental right because there is no fundamental right to run for office. *See Kowall*, 18 F.4th at 547; *see also Clements v. Fashing*, 457 U.S. 957, 963 (1982) ("Far from recognizing candidacy as a 'fundamental right,' we have held that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'")

(quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)).  Accordingly, challenges to term-limit laws receive rational basis review.  *See Kowall*, 18 F.4th at 548.

Fouts argues that his claim mirrors ballot-access challenges that receive heighted scrutiny because we have held that "[f]or ballot-access cases," the "hallmark of a severe burden is exclusion or virtual exclusion from the ballot."  *Graveline*, 992 F.3d at 543 (quoting *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016)).  Because the term-limit amendment excludes Fouts from the ballot, he claims that a higher level of scrutiny applies to his challenge.  This argument is foreclosed by our precedent.  *See Kowall*, 18 F.4th at 547–48.  Ballot-access cases address the constitutionality of barriers for otherwise qualified candidates to be placed on the ballot, such as candidate signature requirements or early filing deadlines that disproportionately impact minor political parties.  *See, e.g.*, *Graveline*, 992 F.3d at 536–37.  By contrast, term-limit laws "operate independently from ballot-access restrictions" because "they limit which individuals are eligible to hold office."  *Kowall*, 18 F.4th at 547.  However Fouts may phrase his argument, it does not change the fact that he has not challenged a law restricting his fundamental rights.

Fouts further argues that the *Anderson-Burdick* framework applies in this case because he brings an as-applied challenge to the charter amendment's purportedly retroactive application to him, which he claims creates a meaningful difference between his challenge and a facial challenge to a term-limit law applied prospectively.  But bringing an as-applied challenge does not change the level of scrutiny applicable to the charter amendment because Fouts still cannot show that he has a fundamental right to run for office.  *See Kowall*, 18 F.4th at 547.  With no fundamental right allegedly impaired, we must resort to rational basis review.  *Id.* at 548.  Moreover, his challenge to the purportedly retroactive application of the term-limit provision also does not raise the level of applicable scrutiny.  For the reasons discussed below, the application of the term-limit amendment to bar Fouts from a fifth term in office does not, in fact, constitute a retroactive application.  But even if it did, while this could create a due process or other constitutional concern, retroactive application does not provide a basis for heightened scrutiny of his First Amendment claim.  *See Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 530 (6th Cir. 2021) (finding that the hypothetically retroactive application of a judicial decision to a party

did not "create a First Amendment problem" because "the centuries-old rule that the government cannot subject someone to punishment without fair notice is not tied to speech"). Instead, because the term-limit amendment does not burden Fouts' fundamental rights, review of his as-applied challenge is subject to rational basis review.

Fouts must thus show that the term-limit amendment, as applied to him, has no rational relationship to any legitimate government interest. *See Kowall*, 18 F.4th at 548. In general, under rational basis review, a defendant "has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Club Italia Soccer & Sports Org. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006), *overruled on other grounds as recognized by Davis v. Prison Health Servs.*, 679 F.3d 433, 442 n.3 (6th Cir. 2012) (quotation omitted). However, in this case, the City Council explicitly stated its legitimate interests in proposing the term-limit amendment. Specifically, in the resolution adopting the ballot proposal later submitted to Warren voters, it stated that "[a] governmental system with an equally balanced distribution of power and effective system of checks and balances would be best served by having equal term limits for all elected city offices." Warren City Council Resolution (June 30, 2020), https://library.municode.com/mi/warren/ordinances/code_of_ordinances?nodeId=1054927. This provides a rational basis for the term-limit amendment. *See Kowall*, 18 F.4th at 548.

A plaintiff may show that a government action lacks a rational basis by either negating "every conceivable basis which might support the government action" or "by showing that the challenged action was motivated by animus or ill-will." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 905 (6th Cir. 2019) (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 788 (6th Cir. 2005)). Fouts argues that the amendment lacks a rational basis because it only limits individuals from holding office who have served three "complete" terms, which he contends suggests that office holders could resign a day before the completion of their terms and run for an endless number of terms. Warren City Charter, § 4.3(d). Fouts argues that, in effect, the term-limit amendment then only limits him from serving another term because he has already completed a full three terms in office. But the highly speculative scenario that Warren office

holders would evade the term-limit amendment's restrictions by resigning early does not meet Fouts' burden to negate "every conceivable basis which might support the government action." *Cahoo*, 912 F.3d at 905. In fact, it does not even negate the express basis for the Council's proposed ballot amendment; no matter how ineffective the term-limit amendment is, it would nevertheless still create "equal term limits for all elected city offices." Warren City Council Resolution (June 30, 2020). Moreover, we have found term-limit laws supported by other legitimate interests, such as a state's interest in structuring its own government, reducing political careerism, and checking special interests' impact on elections. *Kowall*, 18 F.4th at 548. None of these interests have any less force in this case because of Fouts' remote, hypothetical scenario.

Furthermore, Fouts has not sufficiently alleged that the term-limit language was motivated by any "animus or ill-will" that could support a finding of irrationality. *Cahoo*, 912 F.3d at 905. Although Fouts alleged that City Council members drafted the term-limit amendment with a purported "loophole" to permit them to run for office in perpetuity, this allegation does not convey any animus or ill-will directed at Fouts himself. Compl., R. 1, Page ID #11. Because the term-limit amendment was supported by multiple legitimate interests, and because Fouts has not negated the rationality of the amendment in any way, he cannot succeed on his First and Fourteenth Amendment challenge.

### 3. Due Process

Fouts also argues that the purported retroactive application of the term-limit amendment to him violates the Fourteenth Amendment's Due Process Clause. Although "[t]he Due Process Clause . . . protects the interests in fair notice and repose that may be compromised by retroactive legislation," the term-limit amendment did not violate Fouts' due process rights because it does not operate retroactively and does not deprive him of any property or liberty interest protected by the Due Process Clause. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994).

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Id.* at 269 (citation omitted). Similarly, "a statute 'is not made retroactive merely because it draws

upon antecedent facts for its operation.'" *Id.* at 269 n.24 (quoting *Cox v. Hart*, 260 U.S. 427, 435 (1922)). Instead, courts "must ask whether the new provision attaches new legal consequences to events completed before its enactment," that is, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 269–70, 280. Including Fouts' prior terms as mayor when calculating his eligibility under the term-limit amendment does not apply the amendment retroactively under this understanding of retroactivity. Certainly, applying the amendment in this way draws on past actions by Fouts—his prior terms—to assess the term-limit amendment's applicability to him. But it impairs no rights that Fouts had before enactment because Fouts never had a right to run for mayor of Warren. *See Kowall*, 18 F.4th at 547. And it imposes no new liabilities or duties on Fouts because it merely requires him to refrain from serving as mayor, rather than requiring any affirmative act on his part. Instead, the term-limit law only prospectively prohibits Fouts from running for a fifth term "because it draws upon antecedent facts for its operation." *Landgraf*, 511 U.S. at 269 n.24. Merely considering these prior terms does not make the amendment apply retroactively.

On appeal, Fouts argues that the new term-limit amendment imposes a legal disability on him based on his past conduct, which, if true, could make the amendment apply retroactively. *See id.* at 269. But Fouts' inability to run for a fifth term as mayor does not impose any new legal disability because, again, he has no legally cognizable right to run for mayor of Warren. None of Fouts' cited cases change this conclusion. Instead, they all discuss the loss of certain liberties by felons after incarceration, and merely refer to holding public office as a "civil right" or refer to the loss of the right to possess a firearm or ammunition as a "legal disability." *See, e.g.*, *Hampton v. United States*, 191 F.3d 695, 699 (6th Cir. 1999); *United States v. Young*, 766 F.3d 621, 623 (6th Cir. 2014). These cases are inapplicable to the question presented in this case because none of them suggest that Fouts' inability to run for office creates a legal disability. Because the term-limit amendment applies no new obligations to Fouts and deprives him of no existing rights based on his past conduct, it does not apply retroactively merely by using his past conduct to determine his current eligibility for office.

Further, even assuming that the amendment applied retroactively, this retroactive application does not violate due process. Although Fouts does not specify whether he brings a procedural or substantive due process challenge, under either formulation, he must show a deprivation of a property or liberty interest by government action—in this case, the purportedly retroactive application of the term-limit law to him. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Property interests are not defined by the federal Constitution, but are instead created "by existing rules or understandings that stem from an independent source such as state law." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 605 (6th Cir. 2016) (quoting *Ziss Bros. Constr. Co., v. City of Independence*, 439 F. App'x. 467, 471 (6th Cir. 2011)). Longstanding Michigan and federal law confirm that there is no property interest in holding public office. *See Taylor v. Beckham*, 178 U.S. 548, 576 (1900) ("The view that public office is not property has been generally entertained in this country."); *People v. Smith*, 918 N.W.2d 718, 726 (Mich. 2018) ("[T]he law has long been clear that there is no property interest in holding public office."). Moreover, Fouts cites no authority for the proposition that he has a liberty interest in running for or holding public office. Given our prior holding that running for public office does not constitute a fundamental right under the Constitution, Fouts similarly has no liberty interest impacted by the term-limit amendment. *See Kowall*, 18 F.4th at 547.

On appeal, Fouts does not claim to have a property or liberty interest in holding public office, but, instead, claims that he does not need to make such a showing to succeed on his due process claim. But, in support, he only cites the Supreme Court's decision in *Landgraf*, which addressed the canon of statutory interpretation known as the presumption against retroactivity. 511 U.S. at 286. In *Landgraf*, the Supreme Court found that the presumption against retroactivity could conceivably apply to certain procedural rules because it was not limited to cases only involving a deprivation or impairment of "vested rights." *Id.* at 275 n.29. From this statement, Fouts takes the rule that he need not show a deprivation of a constitutionally protected interest to succeed on his due process challenge. Although the presumption against retroactivity discussed in *Landgraf* has its roots in the Due Process Clause, *Landgraf* only addressed a rule of statutory construction, not constitutional interpretation. *See id.* at 266. It did not alter the fundamental showing that a party must make to support a due process challenge: a deprivation of a constitutionally protected interest. Because the term-limit law does not deprive Fouts of any

property or liberty interest, even if it could be understood to apply retroactively, it does not violate the Due Process Clause.[3]

### 4. Equal Protection

Finally, Fouts claims that the term-limit law as applied to him violates the Fourteenth Amendment's Equal Protection Clause. The Equal Protection Clause prohibits "governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect class, or (3) intentionally treats one differently from others similarly situated without any rational basis for the difference." *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527 (6th Cir. 2023). As stated, the term-limit amendment did not burden Fouts' fundamental rights. Nor does Fouts contend that it targeted a suspect class of citizens. Instead, he argues a "class of one" theory, requiring him to allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

The first prong of a "class of one" theory requires proof of intentional discrimination, which, as we have recently clarified, a plaintiff may show through direct or circumstantial evidence. *Green Genie*, 63 F.4th at 527–28. "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Fouts does not argue that Defendants directly discriminated against him by passing the term-limit amendment, nor does his complaint allege evidence of direct discrimination. Instead, as stated, it contends that the term-limit amendment, in effect, only bars him from office as other city officials could exploit the purported "loophole" in the amendment by resigning from office before they finish a "complete" term. Compl., R. 1,

---

[3]On appeal, Fouts argues that the district court improperly failed to consider his argument that the term-limit amendment's purportedly retroactive application violated the federal Constitution. But the district court explicitly considered Fouts' due process challenge, and correctly rejected it because he did not show that he had a constitutionally protected interest in running for office. What Fouts appears to be contesting instead is the district court's refusal to review the Michigan state court's separate conclusion that the text of the term-limit law included Fouts' prior terms. But the district court did not err in concluding that it lacked authority to review any of Fouts' arguments that amounted to a disagreement with how the Michigan state court interpreted the term-limit amendment under Michigan law. Any review of such a claim would constitute an improper review of a state court judgment and violate the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp.*, 544 U.S. at 284.

Page ID #11. This allegation requires us to make too many inferences to glean the intent of City Council members to qualify as direct evidence.

Nor has Fouts alleged sufficient circumstantial evidence to show intentional discrimination. He argues that he has identified a similarly situated comparator who Defendants intentionally treated differently, which if true would satisfy the first prong of the "class of one" claim. *Green Genie*, 63 F.4th at 528. However, a comparator must be "similarly situated in all relevant respects." *EJS Props.*, 698 F.3d at 865 (citation omitted). In this case, Fouts claims that a City Council member, Patrick Green, is a sufficiently similar comparator because the term-limit amendment—which also applied to City Council members—applied differently to Green even though he also had served three terms as a Council member. But, as Fouts himself acknowledges, Green did not serve three "complete" terms on the City Council, but, instead, resigned early from his third term. *See Boike v. Green*, No. 365681, 2023 WL 3588168, at \*1 (Mich. Ct. App. May 22, 2023) (per curiam). Because the term-limit amendment bars individuals from holding office only after the *greater* of three complete terms or twelve years, Green was permitted to serve for a fourth term on the City Council. *Id.* By contrast, the term-limit amendment would bar Fouts from running for a fifth term as he had already served more than three complete terms and for more than twelve years. Plainly, then, Fouts and Green are not similarly situated in one of the most relevant respects: whether they meet the criteria for the term-limit amendment to apply.

Furthermore, even if Fouts had sufficiently alleged that Defendants intentionally discriminated against him by proposing and enforcing the term-limit amendment to bar him from running for office, as stated, the term-limit amendment clearly passes rational basis review. Accordingly, Fouts has failed to state a claim under the Equal Protection Clause.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's dismissal of Fouts' complaint. Because we find that Fouts failed to allege a constitutional violation, we need not reach Defendants' alternative grounds for affirmance.