NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0332n.06

Case No. 23-6002

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 29, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JOSHUA GARTON, | ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| W. RAY CROUCH, et al., | ) ) | |
| Defendants-Appellees. | ) ) | O P I N I O N |

Before: KETHLEDGE, THAPAR, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Plaintiff-Appellant Joshua Garton was arrested, temporarily jailed, and prosecuted for harassment under Tennessee law because he posted a photoshopped picture on Facebook depicting two men desecrating the grave of a deceased police officer. After the charge was dismissed, Garton sued several agents of the Tennessee Bureau of Investigation ("TBI"), a local police department captain, the District Attorney General, and the city of Dickson, Tennessee, for multiple civil rights violations pursuant to 42 U.S.C. § 1983. The court granted dismissal to six of the nine Defendants. Garton subsequently settled his claims with the remaining three defendants and stipulated to their dismissal. Here, Garton appeals the district court's grant of a protective order that was entered before the parties' settlement and voluntary dismissal. Because we lack jurisdiction to consider his claim, we dismiss the appeal.

**I.**

In January 2021, Garton posted a fake picture on Facebook depicting two individuals urinating on the tombstone of a former Dickson Police Department Sergeant who was killed in the line of duty. After identifying Garton as the individual responsible for the post, law enforcement officers arrested, interrogated, and charged him with harassment. Following his arrest, he remained incarcerated at the Dickson County Jail for almost two weeks while he awaited a preliminary hearing. At the conclusion of the hearing, the charges against Garton were dismissed.

Garton sued District Attorney General W. Ray Crouch; several employees of the TBI, including its Director, David Rausch, and agents Bradley Nealon, Russell Winkler, Joshua Melton, Joseph Craig, and Andrew Vallee; the City of Dickson, Tennessee; and Donald Arnold of the Dickson Police Department under 42 U.S.C. § 1983 and Tennessee law. Garton asserted claims for malicious prosecution, false arrest, First Amendment retaliation, denial of equal protection, civil conspiracy, and municipal liability for policies and practices that purportedly violate the First Amendment. He sued Rausch and Crouch in both their individual and official capacities, while he sued the remaining non-municipal defendants in their individual capacities only. Garton sought monetary damages as well as injunctive and declaratory relief. Early in the litigation, the district court dismissed all claims against the City of Dickson and five of the individual defendants—including Garton's official- and individual-capacity claims against Rausch—concluding that they failed to state a claim on which relief could be granted. The court also dismissed Garton's official-capacity claims and accompanying requests for injunctive and declaratory relief against Crouch. These early dismissals left only Garton's individual-capacity claims against Crouch, Craig, and Vallee for false arrest, malicious prosecution, First Amendment retaliation, and civil conspiracy.

During discovery, Craig and Vallee moved for a protective order to limit public disclosure of the TBI investigative case file relating to Garton's arrest. After briefing and a full hearing on the motion, the district court granted the motion and entered the requested protective order. Subsequently, Garton moved for leave to file a second amended complaint, which he principally sought to (1) add more factual allegations against Crouch and (2) enjoin Crouch and Rausch, in their official capacities, from further investigating his meme posting. But while his motion to amend remained pending, Garton settled his claims against Crouch, Craig and Vallee, and filed a stipulation of dismissal with prejudice pursuant to Federal Rule of Civil Procedure 21 as to all three. The district court terminated the case based on the stipulation. A short time later, Garton filed a notice explaining that his unadjudicated motion for leave to file a second amended complaint precluded the court from closing the case. The district court issued an order acknowledging Garton's notice but concluding that Garton's stipulated dismissal with prejudice rendered moot any remaining motions, including his motion to file a second amended complaint. Despite his skepticism about finality, Garton timely appealed, asking us to review the district court's earlier ruling granting a protective order for the TBI investigative files.[1]

## II.

Before addressing Garton's challenge to the district court's entry of the protective order, we must satisfy ourselves that this court has jurisdiction to review the appeal. The parties dispute the finality of the district court's judgment. They also disagree on whether the stipulation dismissing the remaining Defendants and the Release of Liability (alternately, "the Release")

---

[1] After filing his notice of appeal, Garton reached a mediated settlement with previously-dismissed defendants, City of Dickson and Donald Arnold, leaving involuntary dismissals against only Rausch, Nealon, Winkler and Melton.

disposing of the remaining claims moot Garton's appeal of the protective order.  We conclude that the district court's order amounted to a final judgment, but that Garton's claim before us is moot.

**A.**

*Finality*.  Pursuant to 28 U.S.C. § 1291, appellate courts may review "appeals from all final decisions of the district courts."  "A final decision is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Rowland v. S. Health Partners, Inc.*, 4 F.4th 422, 425 (6th Cir. 2021) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)); *see also* Fed. R. Civ. P. 54(b).  This means that rulings made by the district court earlier in litigation may be appealed once such a litigation-ending decision has occurred.  *See Caudill v. Hollan*, 431 F.3d 900, 904 (6th Cir. 2005) (quoting *McLaurin v. Fischer*, 768 F.2d 98, 101 (6th Cir. 1985)) ("An appeal of a final judgment draws into question all prior non-final rulings and orders.").

Garton contends that because he filed his stipulation pursuant to Federal Rule of Civil Procedure 21, rather than under Rule 41, his voluntary dismissal of claims against only three defendants did not end the litigation.  *See* Fed. R. Civ. P. 21; *see also* Fed. R. Civ. P. 41(a)(1)(A)(ii).  True, because Rule 21 applies in cases where "a party improperly adds or omits other parties in a lawsuit," it is generally understood that "mistakes in this area are 'not a ground for dismissing an action.'" *Kitchen v. Heyns*, 802 F.3d 873, 874 (6th Cir. 2015) (quoting Fed. R. Civ. P. 21).[2]  But here, Garton was not dismissing Crouch, Craig and Vallee because he had improperly added them to the lawsuit.  Moreover, they were the last three defendants in the case;

---

[2] Notably, Garton's stipulation did not neatly fit the procedures outlined in Rule 21.  That rule permits court action based on a *motion* by a party or *sua sponte* in cases of misjoinder and nonjoinder.  *See* Fed. R. Civ. P. 21.  Garton neither filed a motion nor alleged misjoinder or nonjoinder in his stipulated order of dismissal.  Rule 41, on the other hand, allows the court to dismiss an action at a party's request "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).  Here, Garton's stipulation did not seek only to drop parties, it sought to dismiss his causes of action against them with prejudice.  Thus, while he framed his request as one brought pursuant to Rule 21, it would seem that the court was permitted by Rule 41(a)(2) to act on his request to dismiss on terms it considered proper.

the court had dismissed with prejudice Garton's claims against the other six defendants over a year before his stipulated dismissal of these three. So, while dismissing parties under Rule 21 ordinarily would not end an action, where dropping a party discharges all remaining defendants and claims with prejudice, such dismissal would necessarily operate as a "final order" for purposes of appellate review. *Cf. In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013) ("When a single action . . . involves multiple parties, a district court ruling that disposes of only . . . some parties is ordinarily not 'final.'"). Garton's voluntary dismissal with prejudice—albeit under Rule 21—of the only remaining claims and defendants in this case left the district court with nothing to review. As such, the entry of the stipulation ended the litigation, and the court's order rejecting Garton's notice constituted a final decision from which appeal could be taken.

**B.**

*Mootness*. Craig and Vallee assert that we are nonetheless constrained from reviewing the district court's earlier protective order ruling due to mootness. We agree.

Mootness is a jurisdictional question we review de novo. *In re Flint Water Cases*, 63 F.4th 486, 497 (6th Cir. 2023). "Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013); U.S. Const. art. III, § 2. The requirement for a live controversy "must be extant at all stages of review." *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67, (1997)). In that regard, "[a] case may become moot at any stage of litigation 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (quoting *Graveline v. Benson*, 992 F.3d 524, 533 (6th Cir. 2021)). "Ultimately, the 'test for mootness is

whether the relief sought would, if granted, make a difference to the *legal interests* of the parties.'" *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (emphasis added) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)). A case is moot "only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

Garton maintains that the dismissal of the final Defendants and the claims against them did not render moot his appeal of the district court's protective order decision. We find this argument unavailing. We have previously observed that under most circumstances, a "settlement of a plaintiff's claims moots an action." *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009) (quoting *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993)) (cleaned up). This is because when a plaintiff "settle[s] and release[s] all of [his] claims against the defendants, the plaintiff[] no longer ha[s] a personal stake—i.e., a legally cognizable interest—in the outcome of the litigation." *Id.*; *see also United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980).

For instance, in *Pettrey*, the plaintiffs brought a class action lawsuit against the defendants alleging claims of fraud. 584 F.3d at 702. The plaintiffs moved to certify the class and after the district court denied the request, they sought interlocutory review with this court, which we denied. *Id.* at 703. The parties then entered a settlement agreement in which the plaintiffs agreed to release all of their individual claims for damages, attorneys' fees, and litigation costs. *Id.* Yet, the plaintiffs had retained their right to appeal the denial of class certification. *Id.* After the district court dismissed the action pursuant to the settlement, the plaintiffs—consistent with their reservation of right—appealed the court's order denying class certification. *Id.* But in reviewing

whether this court had jurisdiction to review the order, we explained that although the settlement agreement reserved the plaintiffs' right to appeal the denial of class certification, it was irrelevant because the plaintiffs "voluntarily chose to bargain away all of their interests via a negotiated settlement [and a release of liability]." *Id.* at 706. And "[b]ecause their personal stake ha[d] been extinguished and no other putative class members ha[d] stepped forward to replace them as the named plaintiffs, th[e] case [was] moot." *Id.*

Though *Pettrey* did not involve a challenge to a protective order, it is nonetheless instructive to our analysis here. Garton executed a Release that dismissed "all claims raised, claimed, or made against the [remaining] Defendants in the Lawsuit, including any additional claims he could have raised against the Defendants, [which were] compromised, settled, and extinguished in their entirety." (R. 116-1, PageID 2180). Unlike the *Pettrey* plaintiffs who at least attempted to preserve their interests in an earlier adjudicated matter in that case, Garton reserved no issues for post-settlement review. It follows that the result would be the same: Garton chose to "bargain away" any "legally cognizable interest" in the litigation's outcome, and his "personal stake [w]as . . . extinguished" as a result. *Pettrey*, 584 F.3d at 706. That includes his interest in Craig and Vallee's earlier adjudicated motion for a protective order. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980) ("Should . . . substantive claims become moot in the Art. III sense, by settlement of all personal claims for example, . . . court[s] retain[] no jurisdiction over the controversy of the individual [defendants]."). As noted, Craig and Vallee moved for the protective order well over a year after the district court dismissed the other six defendants from the lawsuit. The protective order itself pertained to the investigative file concerning Garton's posting of the meme. But there are now no live claims associated with the posting. And to the extent that Garton could, in theory, retain a legal interest in the continuing applicability of the

protective order based on a new or continued dispute with the involuntarily dismissed defendants, Garton neither sought to raise any new claims nor to appeal the dismissals of any of those defendants. Garton's dismissal of and concomitant release from liability of the final defendants left his stake in the outcome of this disputed motion extinguished.

Defendants acknowledge two exceptions that could save Garton's claims: when the case remains live because issues outside of those that were settled have not become moot, and when the underlying dispute between the parties is "capable of repetition yet evading review." *Int'l Union, United Auto., Aerospace, Agr. & Implement Workers of Am. v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir. 1983) (first quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981); and then quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). Crucially, Garton does not directly raise either argument. Instead, in his reply, Garton insists that his appeal of the protective order is not moot because (1) the protective order was not contemplated under the plain language of the Release, and (2) the nature of protective orders permits their review beyond the end of litigation. Whether the Release contemplated the inclusion of the protective order, however, is not dispositive; the parties' failure to expressly identify the protective order ruling as part of the Release does not excuse Garton from the responsibility to demonstrate a legally cognizable interest in the dispute. Indeed, Garton makes no effort to explain what legal interest he retains in the protective order ruling now that he has alternately dismissed and declined to appeal dismissal of all claims, including any potential claims against non-party, past and present employees and agents of the State of Tennessee, associated with the information that the order protects.[3]

---

[3] To the extent that Garton may rely on the general notions of judicial transparency and the public's right to access judicial documents—precepts he raises in his briefing on the merits concerning the propriety of the protective order's issuance—might support his interest in the protective order, Garton cannot anchor his asserted interest to the general public's interest. His stake must be "personal." *Pettrey*, 584 F.3d at 703; *Geraghty*, 445 U.S. at 396. Notably, we have found that a protective order can be reviewed when a legally cognizable interest exists. *See, e.g.*, *Meyer*

Garton's second point, while true as a general matter, does not help him here. We have previously recognized that protective orders may be modified and revoked by a district court even after a case has been settled and dismissed. *See, e.g.*, *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 160 (6th Cir. 1987) (authorizing a challenge to a protective order notwithstanding that "[t]he case was settled and dismissed with prejudice"). The underlying principal lies in the "'long-established legal tradition' allowing the public to inspect and copy judicial records." *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 569 (6th Cir. 2023) (quoting *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016)). That said, it is the district court, not the court of appeals, that retains jurisdiction to modify or lift a protective order under such circumstances—and then only where a legally cognizable interest has been established. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."). Indeed, every case Garton relies on concerned a post-judgment challenge to the ongoing applicability of a presumably valid protective order where the parties demonstrated live stakes in the issue. And none challenged, as Garton does here, the propriety of the original issuance of a protective order. Thus, this issue is not properly raised before us. And we lack jurisdiction to reach the merits.

## III.

For the foregoing reasons, we **DISMISS** the appeal.

---

*Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 164 (6th Cir. 1987) (third-party had a cognizable interest in gaining access to sealed documents for use in a separate antitrust lawsuit).